568 F.2d 902
 50 A.L.R.Fed. 727, 5 O.S.H. Cas.(BNA) 1793,
1977-1978 O.S.H.D. ( 22,099
 W. J. USERY, Jr., Secretary of Labor, Petitioner,
v.
MARQUETTE CEMENT MANUFACTURING COMPANY, Respondent,
and
Occupational Safety and Health Review Commission,
Intervenor-Respondent.
 No. 301, Docket 76-4083.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 6, 1977.
Decided Aug. 29, 1977.
 
 Nancy L. Southard, Atty., Dept. of Labor, Washington, D. C. (William J. Kilberg, Solicitor of Labor, Benjamin W. Mintz, Associate Solicitor for Occupational Safety and Health, Michael H. Levin, Counsel for Appellate Litigation, Allen H. Feldman, Asst. Counsel for Appellate Litigation, Dept. of Labor, Washington, D. C., on the brief), for petitioner Secretary of Labor.
 George W. Moehlenhof, Chicago, Ill. (McDermott, Will & Emery, Chicago, Ill., on the brief), for respondent Marquette Cement Manufacturing Co.
 Rex E. Lee, Asst. Atty. Gen., and Allen H. Sachsel, Atty., Dept. of Justice, Washington, D. C., filed a brief for intervenor-respondent Occupational Safety and Health Review Commission.
 Before MOORE, OAKES, and TIMBERS, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 The Secretary of Labor (Secretary) petitions us to review a decision of the Occupational Safety and Health Review Commission (Commission) which vacated the Secretary's citation of Marquette Cement Manufacturing Company (Marquette) for violating § 5(a)(1) ("general duty clause") of the Occupational Safety and Health Act of 1970 (the Act), 29 U.S.C. § 654(a)(1) (1970).[1] We grant the petition to review, set aside the order of the Commission, and remand for further proceedings.
 
 I. FACTS AND PRIOR PROCEEDINGS
 
 2
 On August 29, 1973 Frank F. Rysavy, a Marquette employee of twenty-seven years, was killed while working on Marquette's premises. He died instantaneously from a crushed skull, after having been struck by a large load of bricks and debris which had been dumped from a hole in the exterior wall of Marquette's kiln building.
 
 
 3
 The dumping of this debris was part of Marquette's process of relining the interior of its kiln, a process that requires about five days and takes place four or five times a year. During this relining process Marquette disposes of worn-out bricks by placing them in a chute in the kiln building. The chute leads to a large hole in the exterior wall of the building. From that hole the bricks fall by gravity to an alleyway twenty-six feet below. The alleyway is between the kiln building and the adjacent crane storage building. Both buildings are part of Marquette's cement manufacturing plant. The alleyway is not barricaded. There is no warning sign to alert employees to the danger of free-falling bricks nor is there an enclosed chute to contain the bricks.
 
 
 4
 In response to a report of this fatality an OSHA compliance officer inspected Marquette's cement plant on September 5, 1973. On September 14 the Secretary cited Marquette, under § 17(k) of the Act, 29 U.S.C. § 666(j) (1970),[2] for a serious violation of § 5(a)(1) of the Act, the general duty clause. The citation described the hazards and the means to protect employees from such hazards.[3] The Secretary proposed a penalty of $600 and ordered abatement by October 8. Marquette contested the citation. On October 17 the Secretary filed a formal complaint with the Commission.
 
 
 5
 Unlike the citation, which had charged a violation of § 5(a)(1) of the Act, the Secretary's formal complaint charged a violation of § 5(a)(2) of the Act, 29 U.S.C. § 654(a)(2) (1970).[4] Under § 5(a)(2) the Secretary charged Marquette with failure to comply with the relevant safety standard which provides that "(n)o material shall be dropped to any point lying outside the exterior walls of the structure unless the area is effectively protected." 29 C.F.R. § 1926.852(a) (1976). The Secretary amended the citation to charge a violation of a specific standard because he believed that "respondent was engaged in the demolition and reconstruction of a brick kiln and therefore the safety and health regulations for construction found at 29 C.F.R. Part 1926 properly apply to this alleged violation."[5]
 
 
 6
 In April 1974 the case was submitted to an administrative law judge (ALJ) on a stipulation of facts and accompanying briefs. Among the most relevant facts, as stipulated, were the following:
 
 
 7
 "6. Respondent disposes of debris resulting from the demolition of the kiln brick by dropping the material outside the exterior wall into the alleyway between the Kiln Building and the Crane Storage Building by means of an unprotected chute approximately 26 feet above the ground.
 
 
 8
 7. Respondent did not provide any protection to employees working near the alleyway between the Kiln Building and the Crane Storage Building from hazards created by falling bricks. Protective devices such as danger signs, barricades or an enclosed chute were not provided as a means of preventing employee exposure to falling bricks.
 
 
 9
 8. At approximately 8:45 p. m. on August 29, 1973 Respondent's employee, Frank F. Rysavy, while in the alleyway separating the Kiln Building and the Crane Storage Building, was struck by a large quantity of debris being dumped out of the chute from the interior of the Kiln Building. Mr. Rysavy was killed immediately as a result of a crushed skull caused by the falling bricks.
 
 
 10
 9. The condition of said chute described above was known to respondent's representatives."
 
 
 11
 In its brief submitted to the ALJ, Marquette contested both the applicability of the safety standard referred to and the allegation of a violation of § 5(a) (1). The Secretary moved before the ALJ to amend the complaint to reallege a violation of the general duty clause in the event the ALJ should determine that Marquette's relining of its kiln did not constitute "construction", thus making 29 C.F.R. § 1926.852(a) inapplicable. Marquette, having anticipated that the Secretary would move to amend the complaint, contended in its brief that amendment should not be permitted.[6]
 
 
 12
 On September 24, 1974 the ALJ filed his decision which vacated the citation. On January 27, 1976 the Commission affirmed. Their respective reasons however differed. The ALJ held that the standards of Part 1926 of the Regulation, applicable to construction work, were not applicable to kiln relining; he allowed amendment of the complaint to charge a violation of the general duty clause; but he concluded that Marquette had not violated that clause. The Commission agreed that Part 1926 was inapplicable[7] and that there had been no violation of the general duty clause; but it held that the ALJ had erred in permitting amendment of the complaint. The result under either theory was the same: the Secretary's citation was vacated.II. AMENDMENT OF COMPLAINT
 
 
 13
 For the reasons below, we hold that the Commission erred in refusing to permit the Secretary to amend the complaint.
 
 
 14
 The purpose of the Federal Rules of Civil Procedure, which apply to OSHA proceedings by virtue of § 12(g) of the Act, 29 U.S.C. § 661(f), " reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." United States v. Hougham, 364 U.S. 310, 317 (1960), quoting Conley v. Gibson,355 U.S. 41, 48 (1957). Rule 15 "re-emphasizes and assists in attaining the objective of the rules on pleadings: that pleadings are not an end in themselves, but are only a means to the proper presentation of a case; that at all times they are to assist, not deter, the disposition of litigation on the merits." 3 Moore's Federal Practice P 15.02(1), at 813 (2d ed. 1974). Furthermore, "administrative pleadings are very liberally construed and very easily amended." (footnotes omitted) National Realty, supra, 489 F.2d at 1264. As one commentator has succinctly observed, "(t)he most important characteristic of pleadings in the administrative process is their unimportance." 1 Davis, Administrative Law Treatise § 8.04, at 523 (1958), quoted in National Realty, supra, 489 F.2d at 1264 n. 29.
 
 
 15
 In view of the unimportance of adhering to strict rules of pleading under the Federal Rules generally and especially in administrative proceedings, and having in mind the particular course of these proceedings, the Commission's refusal to permit the amendment sought by the Secretary strikes us as singularly unjustifiable. The condition alleged to be violative of the Act, under either § 5(a)(1) or § 5(a)(2), was identical. It was described in identical terms in the citation and the complaint. The Secretary proposed the same means of abatement in both. The particular safety standard embodied in 29 C.F.R. § 1926.852(a) requires the same kind of protection from falling debris as would the general duty clause in situations not covered by a specific standard.
 
 
 16
 On the basis of these factors the ALJ concluded that Marquette would not be prejudiced if the pleading were amended to conform to the proof pursuant to Fed.R.Civ.P. 15(b). The Commission disagreed. It held that amendment "could prejudice (Marquette) by not allowing it an opportunity to introduce rebuttal evidence on elements of a (§ 5(a)(1)) violation which are not part of a (§ 5(a) (2)) charge, such as whether the alleged violative condition constituted a recognized hazard."
 
 
 17
 On appeal the parties have proceeded on the same assumption as the Commission and the ALJ did that Rule 15(b) is the relevant rule. They have not discussed Rule 15(a) despite the fact that neither of the two branches of Rule 15(b) applies squarely to the facts of this case. We tend to agree with the ALJ that there was implied consent to trial on the § 5(a)(1) theory. But we hold that, even if there were not, the Commission abused its discretion in not permitting the Secretary to amend pursuant to Rule 15(a).
 
 
 18
 The Secretary argues that Marquette impliedly consented to trial on the § 5(a) (1) theory by stipulating to facts that support a finding of violation of that provision. Marquette on the other hand contends that there was no consent, either express or implied, to trial of the § 5(a)(1) issue; it insists on the contrary that in its brief submitted to the ALJ it objected to any change in the Secretary's theory of violation.
 
 
 19
 Usually consent to the trial of an unpleaded issue is implied from a party's failure to object at trial to the introduction of evidence relevant to the unpleaded issue. Lomartira v. American Automobile Ins. Co., 245 F.Supp. 124, 128-29 (D.Conn. 1965), aff'd, 371 F.2d 550 (2 Cir. 1967); Niedland v. United States, 338 F.2d 254, 258 (3 Cir. 1964); Moore, supra, P 15.13(2), at 994. Here Marquette did not object to the introduction of evidence for it had stipulated to the undisputed facts. And while the evidence itself was received without objection, Marquette's position is that it objected to its use to support a charge of a § 5(a)(1) violation. In essence Marquette objected to the Secretary's change in legal theory. As to this, Professor Moore states:
 
 
 20
 "Rule 15(b) has rejected any concept that . . . amendments are barred if they result in a change of the plaintiff's 'cause of action' . . . . The fact that this involves a change in the nature of the cause of action, or the legal theory of the action, is immaterial so long as the opposing party has not been prejudiced in presenting his case." (footnotes omitted) Id. at 984.
 
 
 21
 The key question is whether prejudice would result from construing the pleadings to conform to the proof.[8] As to that it may be that Marquette consented to the introduction of evidence, through the stipulation of facts, on the understanding that the case would be tried only on a § 5(a)(2) theory. Since the stipulated facts would have been equally relevant to a charge under § 5(a)(1) or § 5(a)(2), Marquette reasonably could have entered into the stipulation of facts on the assumption that § 5(a)(1) no longer was in the case after the Secretary had changed his theory from the former to the latter between the citation and the complaint. "(I)t cannot be fairly said that there is any implied consent to try an issue where the parties do not squarely recognize it as an issue in the trial." Moore, supra, P 15.13(2), at 992. We therefore cannot say without qualification that Marquette consented to trial of the § 5(a)(1) issue.[9]
 
 
 22
 Turning to the second part of Rule 15(b) which deals with the situation where a party objects to the admission of evidence "at the trial on the ground that it is not within the issues made by the pleadings" (emphasis added), in such a case,"the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits." Fed.R.Civ.P. 15(b).
 
 
 23
 This part of Rule 15(b) deals expressly with objection to evidence at trial, and so is not technically applicable to the instant case where the objection was not to the admission of evidence but to a change in legal theory. If this part of the rule were applicable by analogy the standard for allowing amendment would be similar to that under Rule 15(a). Thus we would conclude, as we hold below, that, under either Rule 15(a) or Rule 15(b), the Commission abused its discretion.
 
 
 24
 Under Rule 15(a) the Commission should freely grant leave to amend the pleadings "when justice so requires." That the ALJ already had recommended that leave be granted to amend the complaint is not dispositive. In an administrative proceeding such as this one the Commission itself, not the ALJ, is the trier of facts. Accu-Namics, Inc. v. OSHRC, 515 F.2d 828, 834 (5 Cir. 1975), cert. denied, 425 U.S. 903 (1976).
 
 
 25
 The standard for the Commission's exercise of discretion in granting or denying leave to amend under Rule 15(a) is that stated by the Supreme Court in Foman v. Davis, 371 U.S. 178, 182 (1962):
 
 
 26
 "Of course, the grant or denial of an opportunity to amend is within the discretion of the (trial) (c)ourt, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."
 
 
 27
 Justification for denying leave to amend might be the bad faith of the moving party, undue prejudice to the opposing party, or undue delay. Foman, supra, 371 U.S. at 182; see Moore, supra, P 15.08(2), at 874-75. The Secretary's conduct of these proceedings, while not exemplary so far as his pleadings were concerned, see note 11 infra, certainly was not in bad faith. The only prejudice that Marquette possibly could have claimed was that hypothesized by the Commission that Marquette had not presented evidence relevant to § 5(a)(1) in defending the charge under § 5(a)(2). We note that Marquette itself, neither in its brief submitted to the ALJ nor in that submitted to the Commission, requested leave to present additional evidence. Nor on appeal has Marquette informed us of any significant evidence it would offer in rebuttal to the § 5(a)(1) charge. Even absent such rebuttal evidence both the ALJ and the Commission held that Marquette had not violated § 5(a)(1); so it would be hard to find any prejudice to Marquette.
 
 
 28
 Even assuming arguendo that amendment would have resulted in prejudice to Marquette, plainly it would not have been of the kind contemplated by the rule. Rule 15(b) expressly allows the court to grant a continuance to enable the objecting party to meet the evidence introduced over its objection. Under Rule 15(a) the court may condition leave to amend by allowing the other party to introduce new evidence in defense to the amended pleading. See Moore, supra, P 15.08(6), at 935. Clearly any possibility of prejudice to Marquette attributable to the amendment easily could have been avoided.
 
 
 29
 Before us the Commission argues that allowing any amendment would violate the parties' agreement by stipulation that the only issues to be decided were the applicability of 29 C.F.R. § 1926.852(a) and, if applicable, whether that regulation had been violated. The Commission contends that allowing an amendment would violate the pre-trial provisions of Fed.R.Civ.P. 16. The short answer to this contention is that the instant stipulation is not truly a Rule 16 pre-trial order or its equivalent;[10] and further, even true pre-trial orders under Rule 16 only control the subsequent course of the litigation "unless modified at the trial to prevent manifest injustice." Rule 16 must be read in the light of Rule 15. Moore, supra, P 15.13(1), at 982. Even if Rule 16 were applicable, Rule 15 would prevail here because "the court must . . . balance the need for doing justice on the merits between the parties (in spite of the errors and oversights of their attorneys) against the need for maintaining orderly and efficient procedural arrangements." (footnote omitted) Moore, supra, P 16.20, at 1136.[11] The meager stipulation of facts entered into by the parties here bears no resemblance to the facts developed at a full-scale trial, or even to a complex pre-trial order, either of which might justify a court's reluctance to permit amendment of the pleadings that would call for the presentation of new evidence. "In evaluating claims of prejudice . . . the possible prejudice to the moving party if the motion is denied may also be weighed." Moore, supra, P 15.08(4), at 902. Here the public interest, which the Secretary is charged by law to protect, weighed heavily in favor of allowing amendment.
 
 
 30
 We hold that the commission abused its discretion in refusing to allow amendment of the complaint to charge violation of the general duty clause.
 
 III. VIOLATION OF GENERAL DUTY CLAUSE
 
 31
 On remand the Commission will be required to determine whether Marquette violated the general duty clause. The Commission already has stated its view, on the present record which does not contain any rebuttal evidence from Marquette, that there was no § 5(a)(1) violation. In the interests of administrative and judicial economy, we think it is advisable for us to state, for the guidance of the Commission, why we believe that the present record establishes that Marquette's method of disposing of debris during kiln relining violates Marquette's general duty under § 5(a)(1) of the Act.
 
 
 32
 The employer's duty under § 5(a)(1) is clear. He is required by the statute to "furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees . . . ." To prove a violation of the general duty clause, "the Secretary must prove (1) that the employer failed to render its workplace 'free' of a hazard which was (2) 'recognized' and (3) 'causing or likely to cause death or serious physical harm.' " National Realty, supra, 489 F.2d at 1265. The Commission affirmed the ALJ's conclusion that the Secretary had not sustained his burden of proving the latter two elements of a violation.[12] The asserted basis for this extraordinary conclusion was the absence of any evidence about the reasons for the deceased employee's presence in the alleyway and the fact that he had been a Marquette employee for twenty-seven years.
 
 
 33
 In our view Marquette's debris-dumping activity, conducted without any form of barricade, chute enclosure, or warning sign, constituted a recognized hazard and was likely to cause death or serious physical harm to its employees.[13]
 
 
 34
 To constitute a recognized hazard, the dangerous potential of a condition or activity must actually be known either to the particular employer or generally in the industry. Brennan v. OSHRC and Vy Lactos Laboratories,494 F.2d 460, 463-64 (8 Cir. 1974); National Realty, supra, 489 F.2d at 1265 n. 32. Here a specific safety standard prohibits in the construction industry the practice in question. As Commissioner Cleary noted in his dissent, it hardly matters to the employee whether the overall business of the employer is construction or manufacturing when the hazardous activity is the same. It scarcely requires expertise in the industry to recognize that it is hazardous to dump bricks from an unenclosed chute into an unbarricaded alleyway, twenty-six feet below, between buildings in which unwarned employees work.
 
 
 35
 The present record also establishes that the hazard was likely to cause death or serious injury. The fact that the activity in question actually caused one death constitutes at least prima facie evidence of likelihood: "the potential for injury is indicated on the record by (Rysavy's) death and, of course, by common sense." National Realty, supra, 489 F.2d at 1265 n. 33. "The keystone of the Act . . . is preventability", Brennan v. OSHRC and Underhill Construction Corp., 513 F.2d 1032, 1039 (2 Cir. 1975), for the Act is intended to protect against "possible hazards" and "potential danger". Id., quoting the Legislative History of the Occupational Safety and Health Act of 1970, at 853, 856. The fact that the deceased employee had twenty-seven years experience with the company is irrelevant. Even if the suggested inference could be drawn that the employee should have been aware that the bricks were being dumped the experience of the injured employee has nothing to do with liability under the Act. "The basic weakness of the rationale . . . is that it addresses itself to the foreseeability of the incident as it actually occurred rather than the foreseeability of the general hazard . . . ." Vy Lactos, supra, 494 F.2d at 463. The Secretary need not show any actual injury to prove a § 5(a)(1) violation.
 
 
 36
 The ALJ and the Commission also relied on the absence of evidence of Rysavy's reason for being in the alleyway, and intimated that the Secretary was required to prove that the alleyway was used as a passageway or that employees were assigned to work there. On the contrary, it is sufficient that employees had access to the alleyway, situated as it was between buildings in which employees worked. See Underhill, supra, 513 F.2d at 1038-39. Even if a hazard is partially caused by an employee's own conduct, the employer is responsible if he could have prevented it. National Realty, supra, 489 F.2d at 1266 & n. 36. Here the serious nature of the harm that could result if an employee were to wander into the alleyway during kiln relining warranted precautions against even the slightest possibility of its occurrence, especially when the simple precaution of placing a sign or barricade outside the alleyway would have been effective.
 
 
 37
 Ordinarily, on this record we would remand to the Commission with directions to reinstate the citation. In view of the Commission's insistence, however, that there may be rebuttal evidence to a § 5(a)(1) charge that would have been irrelevant to a § 5(a)(2) charge, we remand the case to the Commission with directions to permit the Secretary to amend the complaint to charge violation of § 5(a)(1); and, if either party so requests, to receive additional evidence relevant to the § 5(a)(1) charge. If no additional evidence is offered, the citation should be reinstated.
 
 
 38
 We grant the petition to review, set aside the order of the Commission, and remand for further proceedings consistent with this opinion.
 
 
 
 [1]
 Section 5(a)(1) of the Act, 29 U.S.C. § 654(a)(1), provides:
 "(a) Each employer
 (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;"
 All statutory citations in this opinion, unless otherwise indicated, are to sections of the Occupational Safety and Health Act of 1970 (the Act).
 
 
 [2]
 Section 17(k) of the Act, 29 U.S.C. § 666(j), in relevant part provides:
 "(A) serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result . . . unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation."
 
 
 [3]
 The citation described the hazards and the proposed means of abatement as follows:
 "The employer failed to furnish to each of his employees working near the passageway between the Kiln Building and the Crane Storage Building a place of employment which is free from recognized hazards that were causing or likely to cause death or serious physical harm to his employees in that the employer did not provide suitable means to protect employees from the hazards created by falling bricks, such as: providing danger signs to alert employees that an immediate hazard exists from falling bricks; providing barricades to deter and prevent employees from entering the brick dumping area; providing an enclosed chute for the dumping of bricks from a 26 foot level; providing other suitable means of preventing employee exposure to falling bricks."
 
 
 [4]
 Section 5(a)(2) of the Act, 29 U.S.C. § 654(a)(2), provides that each employer "shall comply with occupational safety and health standards promulgated under this chapter."
 
 
 [5]
 The specific standards "are intended to be the primary method of achieving the policies of the Act." Brennan v. OSHRC and Underhill Construction Corp., 513 F.2d 1032, 1038 (2 Cir. 1975); see Brennan v. OSHRC and Gerosa, Inc., 491 F.2d 1340, 1343 (2 Cir. 1974); Morey, The General Duty Clause of the Occupational Safety and Health Act of 1970, 86 Harv.L.Rev. 988, 989 (1973). The standards presumably give the employer superior notice of the alleged violation and should be used instead of the general duty clause whenever possible. Brennan v. Butler Lime & Cement Co., 520 F.2d 1011, 1017 n. 9 (7 Cir. 1975); American Smelting & Refining Co. v. OSHRC, 501 F.2d 504, 512 (8 Cir. 1974); National Realty and Construction Co. v. OSHRC, 489 F.2d 1257, 1261 (D.C. Cir. 1973)
 
 
 [6]
 Previously in its answer Marquette had contested the Secretary's right to change the § 5(a)(1) charge of the citation to the § 5(a)(2) charge of the complaint
 
 
 [7]
 The ALJ and the Commission were quite certain that relining Marquette's kiln did not constitute "construction work" within the meaning of 29 C.F.R. § 1910.12(b) (1976) which defines the term as "work for construction, alteration, and/or repair". The ALJ also concluded that 29 C.F.R. § 1926.852(a), which covers "demolition", applies only to the "razing or tearing down of structures" in their entirety, not to the relining of the interior of a kiln which "constituted the repair of the kiln, not its demolition."
 We express no view on this esoteric distinction. We assume for purposes of this opinion that the Commission correctly determined that 29 C.F.R. § 1926.852(a) was inapplicable.
 
 
 [8]
 Professor Moore states that prejudice plays no role under the first part of Rule 15(b); that the question of prejudice arises only under the second part of Rule 15(b) which deals with the situation where one party has objected to evidence; and that the sole inquiry under the first part is whether there has been express or implied consent. And yet Professor Moore recognizes that courts have considered prejudice as relevant to whether there has been implied consent, and he explains the decisions as, "in effect, holding that the opposing party has neither expressly nor impliedly consented . . . ." Moore, supra, P 15.13(2), at 997-98. Earlier in the treatise the test under the first part of Rule 15(b) is stated to be "whether the defendant would be prejudiced by the implied amendment, i. e., whether he had a fair opportunity to defend and whether he could offer any additional evidence if the case were to be retried on a different theory." Id. at 993
 
 
 [9]
 There is authority however for treating this sort of situation as one of implied consent. In Niedland v. United States, supra, defendant's counsel did not object to certain evidence when it was offered at trial but stated after the close of the testimony that he would object to the use of the evidence to support a claim of special damages which had not been pleaded. "The defendant did not assert that it was surprised, nor did it seek a continuance to present evidence in rebuttal." 338 F.2d at 258. The court treated the matter as if there had been implied consent because, aside from the lack of surprise and the failure to seek a continuance, the defendant had defended on the claim well enough partially to persuade the trier of the facts and it appeared that its failure to object was for tactical reasons. Id
 The same could be said here. It appears that Marquette failed to introduce rebuttal evidence, not because it considered the evidence irrelevant to the § 5(a)(2) charge, but because it was confident that the regulation on which the alleged § 5(a)(2) violation was based would be held to be inapplicable. It is not clear to us that a defense to an alleged general duty clause violation, based on the working conditions at issue in this case, would differ from a defense to an alleged violation of 29 C.F.R. § 1926.852(a), based on the same conditions. Although Marquette anticipated and objected to the Secretary's amendment, it did not seek to present new evidence relevant to § 5(a)(1). And even without such evidence its argument on the issue persuaded the ALJ and the Commission that there had been no § 5(a)(1) violation.
 Despite this we recognize that the Secretary's shifts in theory conceivably could have obfuscated whether "the evidence went to the unpleaded issue", Niedland, supra, 338 F.2d at 258, or that the Secretary's "failure or mistake (may have misled) the party charged", NLRB v. Pecheur Lozenge Co., 209 F.2d 393, 401 (2 Cir. 1953), cert. denied, 347 U.S. 953 (1954), or that there was even a slight chance of "misunderstanding as to what was the basis of the (Secretary's) complaint", NLRB v. Mackay Co., 304 U.S. 333, 350 (1938). Accordingly in fairness we hold that there was no implied consent.
 
 
 [10]
 As stated above, ante at 906, § 12(g) of the Act makes the Federal Rules of Civil Procedure applicable to OSHA proceedings "unless the Commission has adopted a different rule". But in 29 C.F.R. § 2200.51 the Commission has provided its own rule for pre-hearing conferences. Unlike Fed.R.Civ.P. 16, the Commission's rule does not provide that the pre-hearing order will control the subsequent course of the action
 The stipulation in the instant case does not even fall within the Commission's own rule, for it was not formulated under the supervision, or confirmed by an order, of the ALJ or the Commission. The reason therefore for refusing to treat the stipulation as controlling with respect to the subsequent course of the action is the same under the Commission's rule as it would be under Rule 16: absent the judge's participation in the formulation of the pre-trial order, and with it the assurance that the real issues have emerged, there is no predicate and little reason to view the stipulation as a controlling pre-trial order.
 
 
 [11]
 If the Secretary had had the foresight to plead in the alternative, Fed.R.Civ.P. 8(e)(2), there could have been avoided all the complications and attendant delay in this case which are contrary to the goal of fair and speedy enforcement of the Act. See generally Atlas Roofing Co. v. Occupational Safety & Health Review Commission, 430 U.S. 442, 460-61 (1977)
 
 
 [12]
 The ALJ concluded that the Secretary
 "had not sustained the requisite burden of establishing that the condition existing at this worksite was causing or was likely to cause any employee serious physical harm or that (Marquette) knew or reasonably could have known that this condition could result in serious physical harm to any of its employees." (footnote omitted).
 The Review Commission "agree(d) with the Judge's finding that the evidence of record does not establish a violation of (§ 5(a)(1)) for the reasons given by him."
 
 
 [13]
 There is no dispute that the place of employment was not "free" of the hazard. Marquette stipulated that no precautions were taken to prevent harm from falling bricks