**CORNELL AND COMPANY, INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Secretary of Labor, Respondents.**

No. 76–2513.

United States Court of Appeals, Third Circuit.

Argued Oct. 17, 1977.

Decided March 9, 1978.

---

Roger D. Susanin, Cunniff, Bray & McAleese, Bala Cynwyd, Pa., for petitioner.

Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Michael H. Levin, Counsel for Appellate Litigation, Allen H. Feldman, Asst. Counsel for Appellate Litigation, Dennis K. Kade, Nancy L. Southard, U. S. Dept. of Labor, Washington, D. C., for respondents.

Before ROSENN and VAN DUSEN, Circuit Judges, and COHILL, District Judge.*

* Honorable Maurice B. Cohill, Jr., United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. This court has previously reviewed the scope and mechanics of the Act. *See, e. g., Budd Co.*

## OPINION OF THE COURT

COHILL, District Judge.

On September 22, 1976, the Occupational Safety and Health Review Commission (the "Commission") rendered a decision holding that petitioner, Cornell and Company, Inc. ("Cornell"), had violated the safety standards of 29 C.F.R. §§ 1926.28(a) and 1926.-104, promulgated pursuant to the Occupational Safety & Health Act of 1970, 29 U.S.C. § 651 *et seq* (the "Act").[1] The Commission assessed a $700 penalty against Cornell. Pursuant to 29 U.S.C. § 660(a), we are here reviewing that decision.

### I

After carefully reviewing the facts, we conclude that the Commission abused its discretion in allowing the Secretary of Labor (the "Secretary"), pursuant to Fed.R.Civ.P. 15, to amend twice a complaint against Cornell, the last one being over 4 months after the original citation alleging a violation by Cornell. We therefore vacate the Commission's order permitting the amendment of the citation and the assessment of a penalty.

Cornell is a steel construction contractor, which in the summer of 1974 was erecting at a refinery in Philadelphia a steel flare stack (a metal chimney) and a supporting three-legged steel frame, resembling an oil derrick. This structure was constructed in two stages. The first stage, known as the "connecting stage," consisted of two steps. In the first step—the "vertical connecting" step—workers called "connectors" initially secured the vertical beams into position. In the second step—the "horizontal connecting" step—the vertical beams were secured temporarily by connecting horizontal and diagonal beams as cross-bracing. When these two steps were completed, the procedure was repeated at the next level until

*v. OSHRC,* 513 F.2d 201 (3d Cir. 1975); *Brennan v. OSHRC (Hanovia Lamp Div.),* 502 F.2d 946 (3d Cir. 1974). *See also* Hunt, *The Elusive Burden of Proof Under the Occupational Safety and Health Act of 1970,* 30 Sw.L.J. 693 (1976).

the structure reached the required elevation. After the frame was completely erected and connected, the ironworkers proceeded to the second stage of construction, the "bolting up" stage. This involved securing the entire structure by fastening additional bolts at each connection joint. Only after this was completed was the structure sufficiently braced to meet the architect's specifications.

On June 27, 1974, a compliance officer for the Department of Labor, Occupational Safety and Health Administration inspected the jobsite while Cornell's employees were in the connecting stage, working at an elevation of 100 feet. On July 2, 1974, as a result of that inspection, the Secretary issued a citation against Cornell and proposed a $700 penalty for a serious violation of 29 C.F.R. § 1926.750(b)(2),[2] which mandates the use of temporary flooring, where practical, for skeleton steel erection in tiered buildings. Cornell timely contested the citation, asserting that the specified safety standard did not apply to Cornell's project, since the frame was a non-tiered structure.

Apparently the Secretary agreed, and on August 22, 1974, he issued a complaint, but moved to amend the citation by adding a violation of another standard, this time citing 29 C.F.R. § 1926.750(b)(1)(ii),[3] which requires the use of safety nets where it is impractical to use temporary flooring for skeleton steel erection in tiered buildings. The unopposed motion was granted, and Cornell's contest letter was treated as an answer to the complaint.

On November 4, 1974, just nine days before the hearing, and more than 4 months after the inspection, the Secretary again moved to amend the citation and complaint by withdrawing the allegations of violations of 29 C.F.R. §§ 1926.750(b)(2) and 1926.750(b)(1)(ii), and alleging instead violations of 29 C.F.R. §§ 1926.28(a) and 1926.104,[4] requiring the use of safety belts. The Secretary conceded that the violations previously alleged were inapplicable. Cornell did not receive a copy of the proposed amended complaint until November 6 or 7; the hearing took place on November 13.

At the start of the hearing on November 13, 1974, the administrative law judge ("ALJ") tentatively denied a motion by Cornell to dismiss the complaint on the ground of undue prejudice to Cornell from the Secretary's delay in citing violations of the proper safety standards. At the conclusion of the hearing on the merits, the ALJ offered Cornell 30 days to gather and present additional evidence. Cornell, how-

---

2. This regulation reads in part as follows:
> (b) Temporary flooring—skeleton steel construction in tiered buildings
> (2)(i) Where skeleton steel erection is being done, a tightly planked and substantial floor shall be maintained within two stories or 30 feet, whichever is less, below and directly under that portion of each tier of beams on which any work is being performed; except when gathering and stacking temporary floor planks on a lower floor, in preparation for transferring such planks for use on an upper floor. Where such a floor is not practicable, paragraph (b)(1)(ii) of this section applies.
> *   *   *   *   *   *

3. The standard provides:
> (b) Temporary flooring—skeleton steel construction in tiered buildings.
> *   *   *   *   *   *
> (1)(ii) On buildings or structures not adaptable to temporary floors, and where scaffolds are not used, safety nets shall be installed and maintained whenever the potential fall distance exceeds two stories or 25

feet. The nets shall be hung with sufficient clearance to prevent contacts with the surface of structures below.

4. The sections read as follows:
> § 1926.28 Personal protective equipment.
> (a) The employer is responsible for requiring the wearing of appropriate personal protective equipment in all operations where there is an exposure to hazardous conditions or where this part indicates the need for using such equipment to reduce the hazards to the employees.
> § 1926.104 Safety belts, lifelines, and lanyards.
> (a) Lifelines, safety belts, and lanyards shall be used only for employee safeguarding. Any lifeline, safety belt, or lanyard actually subjected to in-service loading, as distinguished from static load testing, shall be immediately removed from service and shall not be used again for employee safeguarding.
> (b) Lifelines shall be secured above the point of operation to an anchorage or structural member capable of supporting a minimum dead weight of 5,400 pounds.

ever, concluded that the additional time would not remedy the prejudice it had suffered in preparing its defense and therefore presented no additional evidence.

In his decision, the ALJ ruled that Cornell's ability to prepare a defense had been materially impaired by the delay in filing the last amendment. He also held that even if it were assumed that Cornell's ability to defend the citation had not been impaired, the Secretary had failed to prove a violation. Accordingly he granted Cornell's motion to dismiss and vacated the citation and penalty. On the Secretary's petition for review, the Commission reversed in a 2–1 decision, holding that the amendments did not prejudice Cornell and that the evidence established a safety belt violation. The Commission affirmed the citation, as amended, and assessed a $700 penalty.

The primary issue presented is whether the Commission erred in permitting the Secretary on November 4, 1974 to amend his citation and complaint to allege a violation of the safety belt standards. Cornell argues that the amendment changed the legal and factual basis of the alleged violation, thereby preventing it from presenting its sole defense. We agree.[5]

## II

Under the Commission's procedural rules, the standard applicable to amendment of the Secretary's citation and complaint is Fed.R.Civ.P. 15. *See* 29 C.F.R. § 2200.2; *Bloomfield Mechanical Contracting, Inc. v. OSHRC*, 519 F.2d 1257, 1262 (3d Cir. 1975). In general, the grant or denial of a motion for leave to amend, pursuant to Fed.R.Civ.P. 15(a), is within the sound discretion of the district court; it will be reversed only for an abuse of discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Canister Co. v. Leahy*, 191 F.2d 255,

257 (3d Cir.), *cert. denied*, 342 U.S. 893, 72 S.Ct. 201, 96 L.Ed. 669 (1951). Rule 15(a) directs that leave to amend "shall be freely given when justice so requires."

In *Foman* the Supreme Court identified factors governing motions to amend under Rule 15(a):

"Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), ¶¶ 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. —the leave sought should as the rules require, be 'freely given.'"

371 U.S. at 182, 83 S.Ct. at 230. *See* Moore's Federal Practice ¶ 15.08[4], at 897–900 (2d ed. 1974); 6 C. Wright & A. Miller, Federal Civil Procedure § 1487 (1971). Delay alone, however, is an insufficient ground to deny an amendment, unless the delay unduly prejudices the non-moving party. *Deakyne v. Commissioners of Lewes*, 416 F.2d 290, 300 n.19 (3d Cir. 1969); *Mercantile Trust Company National Association v. Inland Marine Products Corp.*, 542 F.2d 1010, 1012 (8th Cir. 1976); Moore ¶ 15.-08[4], at 901; Wright & Miller § 1488, at 438.

It is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Kerrigan's Estate v. Joseph E. Seagram & Sons*, 199 F.2d 694, 696 (3d Cir.

---

5. Cornell also argued that the Commission should not have reversed the ruling of the administrative law judge in which he held that the Secretary had failed to prove a violation.

A consideration of this argument is unnecessary since we hold that the last amendment should not have been permitted.

1952); Moore ¶ 15.08[4], at 897; Wright & Miller § 1487, at 428. In evaluating the extent of prejudice, courts may inquire into the hardship to the non-moving party if leave to amend is denied. Moore ¶ 15.08[4], at 902; Wright & Miller § 1487, at 429.

Having set out the basic principles concerning Fed.R.Civ.P. 15, we turn to the present case. We are reviewing the order of the Commission, not of the ALJ. 29 U.S.C. § 660(a); *Accu-Namics, Inc. v. OSHRC,* 515 F.2d 828, 834-35 (5th Cir. 1975), *cert. denied,* 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976). Since the Commission allowed the November 4 amendment, the question becomes whether the Commission abused its discretion in so doing. We conclude that it did.

■ Cornell's sole defense to the last amendment to the complaint was that at the time the compliance officer made his inspection it would have been more dangerous for the ironworkers to use the safety belts than not to use them because the beams were not sufficiently braced. *See United States Steel Corp. v. OSHRC,* 537 F.2d 780 (3d Cir. 1976); Hunt, *The Elusive Burden of Proof Under the Occupational Safety and Health Act of 1970,* 30 Sw.L.J. 693, 713 (1976).

In this type of construction there are times when the vertical beams are in place, but not securely fastened, so it may be dangerous to attach a safety belt to them; if the beam toppled it would carry the workman with it. To present this defense adequately, Cornell needed as witnesses the workers who were on the job at the time of the inspection. It was undisputed that the workers were wearing but not using safety belts at the time of the inspection, but testimony as to the stability of the beams where they were working at the precise time of the inspection, and the danger of using the belts in accordance with the safety belt standard at that exact time, was vital to Cornell's defense. Contrary to the position taken by the Commission and the Secretary, we therefore regard the workers' testimony as indispensable.

The record indicates that the timing of the final amendment, more than 4 months after the inspection, made it impossible for Cornell to locate these needed witnesses. The workers were transients, hired from union halls to work at various job sites. Cornell had long since lost contact with them and had tried unsuccessfully to get workers from that particular job as witnesses at the hearing. This inability to secure necessary witnesses, caused solely by the delay of the Secretary in seeking the amendment, vitiated Cornell's ability to present its sole affirmative defense.

Furthermore, the last amendment to the complaint completely changed the nature of the charges against Cornell. At the time of the inspection the compliance officer alleged that there was no temporary flooring, for which Cornell was subsequently cited under 29 C.F.R. § 1926.750(b)(2). Cornell advised the Secretary that the structure was not a tiered building requiring such flooring. The Secretary then, for reasons not clear, sought to amend the citation by adding an alternative violation, alleging lack of safety nets as required by 29 C.F.R. § 1926.750(b)(1)(ii); this standard also was applicable only to tiered buildings. Thus the only issue in dispute until a few days before the hearing was whether or not the structure was a "tiered building" to which the alternative sections of the regulations applied. Cornell did not need the ironworkers' testimony to prevail on that issue.

When the Secretary moved to amend the complaint to allege a safety belt violation, however, months after the inspection and just before the hearing, the legal and factual matters in dispute changed drastically. Instead of the issue being whether the structure was or was not a "tiered building," the inquiry suddenly shifted to whether that part of the structure near the ironworkers was sufficiently secure at the time of the inspection to permit the workers to attach their safety belts to it. In the preparation of its defense, Cornell was entitled to rely on the Secretary's earlier allegations in the matter; this justifiable reliance obviously prevented Cornell from securing testimony of the ironworkers needed to assert

its affirmative defense. *Cf. Deakyne v. Commissioner of Lewes,* 416 F.2d 290, 300 (3d Cir. 1969); *Ricciuti v. Voltarc Tubes, Inc.,* 277 F.2d 809, 814 (2d Cir. 1960). *See also Hayden v. Ford Motor Company,* 497 F.2d 1292, 1294–96 (6th Cir. 1974). In light of this unmistakable prejudice, we conclude that the Commission abused its discretion in allowing the amendment.

To permit the amendment in the current case would work a greater prejudice to the employer than the amendment denied in *Secretary of Labor v. Frank Briscoe Company, Inc.,* 4 OSHC 1729 (1976). There, the Commission reversed the administrative law judge's allowance of an amendment offered two days before the hearing without any explanation by the Secretary for the delay. The original citation in that case concerned the manner in which guard rails were installed, whereas the amended citation pertained to the lack of different protective equipment. The Commission concluded:

"Complainant completely abandoned the original charge; he changed the factual basis for the charge as well as his legal theory (the standard on which the charge was based) and thereby injected new issues into the case. In the circumstances we do not consider it fair to require Respondent to defend against an amendment of this kind particularly since the physical condition of the scaffold was observed during the inspection and therefore could have been properly alleged in the first instance."

4 OSHC at 1132–33. (footnote omitted.) In the instant case, the prejudice resulting from permitting the amendment is even clearer since the record shows that the Secretary's delay was the direct cause of the inability of Cornell to secure the testimony of witnesses vital to its defense.

The Secretary argues that "administrative pleadings are very liberally construed and very easily amended," citing *National Realty and Construction Co. v. OSHRC,* 160 U.S.App.D.C. 133, 489 F.2d 1257, 1264 (1973), and that an employer "does not have any vested right to go to trial on the specific charge[s] mentioned in the citation," citing *Long Manufacturing Co. v. OSHRC,* 554 F.2d 903, 907 (8th Cir. 1977). Nevertheless, there must be limits to such generalizations. It has been said that "the key to pleading and notice in the administrative process is adequate opportunity to prepare. . . ." 1 K. Davis, Administrative Law Treatise § 8.05, at 530 (1958). The potential for prejudice in permitting unlimited and untimely amendments has been realized in the case at bar.

The Secretary further urges that any prejudice Cornell suffered was cured by the 30 day extension that the ALJ granted Cornell to present additional evidence after the hearing. The Secretary asserts, moreover, that Cornell suffered no prejudice because it had been on notice of the safety belt issue since the inspection and because the hazard of workmen falling was the danger underlying all alleged violations. We disagree with the Secretary's assertion that once Cornell became aware of the alleged hazard, Cornell then had the obligation to prepare or preserve defenses for all possible standards under which it might be cited, including the safety belt standard. Even the attorney for the Secretary was unsure at the hearing which part or parts of the two safety standards specified in the amended complaint were controlling, thereby demonstrating the inordinate difficulty imposed on Cornell to ascertain the standards applicable to its conduct.

Preparing for a hearing of this nature is not the same as preparing for a football game. Surely it is unfair to charge an employer with the burden of guessing what violations the Secretary might charge and preparing a number of defenses accordingly.[6] The Secretary's rationale that the un-

---

**6.** We caution against reading this opinion to confer blanket authority for an employer to resist amended citations or complaints in situations in which it is fair to make the amendment, for example where the amended complaint puts no different facts in issue than did the original citation. *See, e. g., Usery v. Marquette Cement Manufacturing Co.,* 568 F.2d 902 (2d Cir. 1977), discussed in text *infra.* We think it prudent and desirable for an employer,

derlying hazard was common to all cited standards ignores the crucial distinction that the different standards put different facts in dispute. A defense based on the type of structure Cornell erected, in response to a charge grounded on a lack of flooring or a safety net, is quite different from a defense based on whether or not the use of safety belts might increase, rather than decrease, the hazard of workmen falling at that moment in time when the compliance officer was observing those men from a distance of some 100 feet.

We agree with the principle of *National Realty* stated above, but a line must be drawn at some procedural point. Comparing the harm to the public interest from dismissing the amended citation in a case where the job has been completed with the prejudice to Cornell if the last amendment were allowed, permits only the conclusion that allowing the amendment would be to permit procedural unfairness.

Lastly, the Secretary urges that *Usery v. Marquette Cement Manufacturing Co.*, 568 F.2d 902 (2d Cir. 1977) is analogous to the present controversy. We disagree. In *Marquette* the citation was for a violation of the "general duty clause" of the Act, 29 U.S.C. § 654(a)(1), for the hazardous dumping of debris in the process of relining a kiln. The complaint, however, charged a violation of a specific safety standard applicable only to the construction industry. Seven months later the case was submitted to an administrative law judge on stipulated facts and accompanying briefs. The Secretary moved before the administrative law judge to amend the complaint to reallege a violation of the general duty clause in the event that the judge found the specific construction standard inapplicable. To this, Marquette objected.

The Second Circuit held that the Commission abused its discretion in not permitting

the Secretary to amend pursuant to Fed.R. Civ.P. 15(a). 568 F.2d 909. The court pointed out that the condition allegedly violative of the Act was identical under either the general duty clause or the specific standard, and that the Secretary proposed the same means of abatement in both. The particular standard, the court noted, required the same kind of protection as did the general duty clause in situations not covered by the specific standard. The court concluded that Marquette was not prejudiced in the least, and that even if it were prejudiced, Marquette could have sought a continuance, which would have enabled it to present any additional evidence needed in rebuttal, thereby curing the prejudice.

Although several distinctions exist between *Marquette* and the case before us, the controlling difference in short is the lack of incurable prejudice in *Marquette*, as opposed to the severe, irremediable prejudice that Cornell would suffer from allowing the amended complaint. In our view, therefore, *Marquette* adds no vitality to the Secretary's arguments.

### III

For the reasons expressed above, the Commission's order will be vacated and the Commission directed to dismiss the citation.

---

once notified by a safety inspector of a possible safety violation, to take pictures and collect

evidence concerning all facts that he intends to dispute regarding the alleged violation.