630 F.2d 446
 8 O.S.H. Cas.(BNA) 1980, 1980 O.S.H.D. (CCH) P 24,745
CONTINENTAL OIL COMPANY, Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and
Secretary of Labor, Respondents.
 No. 78-3445.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 11, 1980.
Decided Sept. 2, 1980.
 
 R. Allan Edgar, Miller & Martin, Chattanooga, Tenn., for petitioner.
 OSHRC, Washington, D. C., Domenique Kirchner, Allen Feldman, Dennis Kade, U.S. Department of Labor, Washington, D. C., for respondents.
 Before CELEBREZZE and KEITH, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 PHILLIPS, Senior Circuit Judge.
 
 
 1
 This case is before the court on petition to review the order of the Occupational Safety and Health Review Commission affirming the Secretary of Labor's citation against petitioner for violation of the general duty clause of § 5(a)(1) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 654(a) (1). We affirm.
 
 
 2
 Petitioner, Continental Oil Company, operates a pipeline terminal facility in Chattanooga, Tennessee. Petroleum products are stored in large tanks. The products are piped into the facility from a common carrier pipeline which has a centralized dispatch facility in Atlanta, Georgia, and a local dispatch facility near the tank farm. Distribution of the products is then made in trucks which load at the farm and make local deliveries.
 
 
 3
 At the time of the accident giving rise to this proceeding, the tank farm was operated by a single employee, the terminal manager. The scheduling of pipeline deliveries would begin approximately three months prior to the actual delivery, with frequent updates. The terminal manager was required to be present at the farm one hour prior to each delivery to check the available capacity of each tank. He was then free to leave the facility during delivery but was required to return prior to the completion of each delivery. He could stop the product flow by a simple telephone call to either the local or Atlanta dispatcher. By this procedure Continental undertook to protect against the hazard of accidental overflows during product delivery at the farm.
 
 
 4
 On the morning of September 25, 1972, a truck driver was preparing to load his truck at the tank farm when he discovered a tank overflowing. He left the premises and notified the terminal manager and the police. Ross, the terminal manager, entered the terminal area against the advice of firefighters in an attempt to close the valves manually. An explosion and fire erupted, killing Ross and two workers in a nearby plant.
 
 
 5
 The Secretary charged that Continental violated the general duty clause of the Act because Continental did not provide automatic detection devices or manned delivery systems to protect against overflows. On August 10, 1973, an Administrative Law Judge vacated the general duty clause violation. On review, the Commission, with one seat vacant, affirmed this aspect of the ALJ's decision with a 1-1 vote. The Secretary petitioned this court for review and we remanded to the Commission upon motion of the Secretary. Dunlop v. Continental Oil Co., No. 75-1961 (6th Cir. Oct. 17, 1977). On remand, the full Commission, one member abstaining, affirmed the citation with respect to the violation of the general duty clause.
 
 
 6
 The issue before this court is whether there is substantial evidence in the record to support the Commission's finding that Continental violated the general duty clause of the Act, 29 U.S.C. § 654(a)(1), by failing to free its facility of the dangers created by product overflow; that is, by failing to employ automatic detection devices or manned deliveries to detect accidental overflows.
 
 
 7
 In establishing a violation of the general duty clause, it is incumbent upon the Secretary to prove "(1) that the employer failed to render its workplace 'free' of a hazard which was (2) 'recognized' and (3) 'causing or likely to cause death or serious physical harm.' "[1] Empire-Detroit Steel v. OSHRC, 579 F.2d 378 (6th Cir. 1978).
 
 
 8
 In its brief, Continental states that "it has never disputed the fact that spilled gasoline is hazardous," but contends that to establish a "recognized hazard" the Secretary must demonstrate that some action that Continental did or did not take is recognized as hazardous in the industry. However, Continental's admitted knowledge of the dangerous potential of spilled petroleum products is sufficient to establish a "recognized hazard." Empire-Detroit Steel, supra, 579 F.2d at 383; Usery v. Marquette Cement Manufacturing Co., 568 F.2d 902, 910 (2d Cir. 1977); Cape & Vineyard Div. v. OSHRC, 512 F.2d 1148, 1152 (1st Cir. 1975); Brennan v. OSHRC (Vy Lactos Laboratories, Inc.), 494 F.2d 460, 463-64 (8th Cir. 1974).
 
 
 9
 The question of whether a hazard is recognized goes to the knowledge of the employer, or if he lacks actual knowledge, to the standard of knowledge in the industry-an objective test. Marquette Cement Manufacturing Co., supra, 568 F.2d at 910; National Realty and Construction Company, Inc. v. OSHRC, 489 F.2d 1257, 1265, n.32 (D.C.1973); 116 Cong.Rec. 38377 (1970); Morey, The General Duty Clause of the Occupational Safety and Health Act of 1970, 86 Harv.L.R. 988, n.37 (1973).
 
 
 10
 The Commission found that Continental recognized the hazards posed by overflows of this inherently dangerous product and that Continental was aware of a similar explosion at another tank farm which, like Continental, used an unmanned delivery system.
 
 
 11
 The question of the steps taken to alleviate the recognized hazard goes to the issue of whether the employer has "failed to render its workplace 'free' of (the) hazard." National Realty, supra, 489 F.2d at 1266-67. We must determine whether there is substantial evidence in the record to support the finding of the Commission that Continental did not render its workplace "free" of the hazard.
 
 
 12
 Just what an employer must do to render its workplace free of a recognized hazard has been the subject of much discussion. In National Realty, supra, 489 F.2d at 1265-66, the court said:
 
 
 13
 Construing the term in the present context presents a dilemma. On the one hand, the adjective is unqualified and absolute: A workplace cannot be just "reasonably free" of a hazard, or merely as free as the average workplace in the industry. On the other hand, Congress quite clearly did not intend the general duty clause to impose strict liability: The duty was to be an achievable one. (Footnotes omitted.)
 
 And, id. at 1265, n. 34:
 
 14
 Though the Senate and House committee reports on the Act stated that the general duty clause incorporated "common law principles," the standard of care imposed by the clause was not characterized in terms of reasonableness. Rather, the reports speak of a
 
 
 15
 general and common duty to bring no adverse effects to the life and health of their employees throughout the course of their employment.
 
 
 16
 H.R.Rep.No.91-1291, supra note 7, at 21; S.Rep.No.91-1282, supra note 27, at 9; U.S.Code Cong. & Admin.News, 1970, p. 5186. (Emphasis added.) Overtones of the reasonableness standard are to be found only in the Act's definition of a serious violation, see note 41 infra. That employers must take more than merely "reasonable" precautions for the safety of employees follows from the great control which employers exert over the conduct and working conditions of employees. See H.R.Rep.No.91-1291, id. and S.Rep.No.91-1282, id.
 
 
 17
 The Secretary, in the citation issued to Continental charged that:
 
 
 18
 The employer failed to furnish his employees working in the Southern Facilities Terminal on Jersey Pike in Chattanooga, Tennessee a place of employment which was free from recognized hazards that were causing or were likely to cause death or serious physical harm to his employees in that:
 
 
 19
 (3) Automatic detection devices or persons were not employed to detect accidental discharge of flammables so that hazardous conditions that would endanger employees and others could be prevented.
 
 
 20
 The record shows that Continental's procedure for freeing the workplace of this hazard consisted of calculating the tank volume available for incoming products, having the tank farm manager on the premises one hour prior to each delivery and then requiring him to return to the farm prior to the completion of the delivery. Continental stresses that delivery could be shut down immediately by telephoning either of two dispatcher locations or manually shutting off the valves at the farm itself. It is evident that these procedures would be fruitless if a tank overflowed during the delivery period when the farm manager is not on the premises. The record also shows that other farms, but not necessarily all tank farms, utilized either manned delivery systems, high level alarms, or both.
 
 
 21
 As the court said in National Realty, supra, 489 F.2d at 1266, n. 37:
 
 
 22
 This is not to say that a safety precaution must find general usage in an industry before its absence gives rise to a general duty violation. The question is whether a precaution is recognized by safety experts as feasible, not whether the precaution's use has become customary. Similarly a precaution does not become infeasible merely because it is expensive. But if adoption of the precaution would clearly threaten the economic viability of the employer, the Secretary should propose the precaution by way of promulated (sic) regulations, subject to advance industry comment, rather than through adventurous enforcement of the general duty clause.
 
 
 23
 See also Voegele Co., Inc. v. OSHRC, 625 F.2d 1075 (1980); Ray Evers Welding Co. v. OSHRC, 625 F.2d 726 (6th Cir. 1980); General Dynamics Corp. v. OSHRC, 599 F.2d 453 (1st Cir. 1979).
 
 Further:
 
 24
 Though the level of hazard recognition required by the 'general duty' clause is measured against industry employer knowledge . . . an abatement order under section 5(a)(1) may require that work practices and safety precautions be upgraded to a feasible level which is above that considered customary or 'reasonable' by an industry. (Citations omitted.) Southern Railway Co., (1975-1976) CCH OSHD P 20,091 (1975).
 
 
 25
 The record shows specific instances where some of the other tank farms in the industry employed delivery systems or high level alarms, the safety precautions proffered by the Secretary. Witnesses for both the Secretary and Continental recognized the safety utility of these controls. The record establishes the feasibility and reasonableness of utilizing these controls either alone or in concert with each other. It also supports the conclusion that Continental's procedure was inadequate at the time of the accident.
 
 
 26
 We conclude that there is substantial evidence in the record to support the finding of the Commission that Continental violated the general duty clause of 29 U.S.C. § 654(a)(1) by failing to free its facility of the dangers created by product overflow. Accordingly, the order of the Occupational Safety and Health Review Commission affirming the Secretary of Labor's citation is affirmed.
 
 
 
 [1]
 29 U.S.C. § 654(a)(1) reads in pertinent part:
 § 654. Duties of employer and employee
 (a) Each employer-
 (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees; . . .