NELSON TREE SERVICES,
INC., Petitioner,

v.

OCCUPATIONAL SAFETY AND
HEALTH REVIEW COMMISSION, and
Robert B. Reich, Secretary of Labor, Respondents.

No. 94–3705.

United States Court of Appeals,
Sixth Circuit.

Argued June 6, 1995.

Decided Aug. 1, 1995.

Gary W. Auman (argued and briefed), Matthew D. Stokely, Dunlevey, Mahan & Furry, Dayton, OH, for Nelson Tree Services, Inc.

Ray Darling, Secretary, O.S.H.R.C., Washington, DC, for Occupational Safety & Health Review Com'n.

Barbara A.W. McConnell (argued and briefed), Barbara Werthmann, U.S. Dept. of Labor, Office of Sol., Washington, DC, for Robert B. Reich.

Before: MARTIN and SILER, Circuit Judges; JOINER, District Judge.*

* The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michi-

BOYCE F. MARTIN, Jr., Circuit Judge.

Nelson Tree Services, Inc., appeals the final order of the Occupational Safety and Health Review Commission denying its petition for discretionary review and adopting the determination of the administrative law judge that Nelson Tree Services violated the Occupational Health and Safety Act's "general duty clause." 29 U.S.C. § 654(a)(1). Claiming that substantial evidence does not support the administrative law judge's findings that being struck with a prematurely felled tree is a recognized hazard in the utility line clearance industry and that the suggested means of abatement would materially reduce the hazard, Nelson Tree Services asks this Court to vacate the Commission's order. For the following reasons, we AFFIRM the decision of the Occupational Safety and Health Review Commission but modify Nelson's abatement obligation.

I.

Nelson Tree Services is a company that is hired by public utilities to trim and cut trees obstructing utility lines. On March 19, 1993, the company was cutting trees that interfered with power lines in a residential area in Hanoverton, Ohio. Foreman Larry Dulaney and Kevin Fetterman were felling a willow tree about twenty-five yards from the location where foreman Michael Shaffer and Ricky Duck were felling a maple tree. After making two of the three cuts necessary to fell the willow tree, Dulaney stopped to refuel his chainsaw. At that point, Shaffer and Duck approached Dulaney to express their concern that he was making the cuts too large. After confronting Dulaney, Duck and Shaffer headed back toward the maple tree, crossing directly in front of the willow. The willow snapped, and its thirty-foot trunk fell on top of Shaffer, pinning him to the ground and killing him.

II.

On March 22, 1993, an Occupational Safety and Health Administration compliance officer

gan, sitting by designation.

inspected the worksite in connection with Shaffer's death and cited the company for violating the Occupational Safety and Health Act. Specifically, the citation alleged that Nelson Tree Services violated the Act's "general duty clause" by failing to protect its workers from the recognized hazard of being struck by a tree that falls prematurely during the felling process. The citation also identified a feasible and acceptable method of abating the hazard: following standards promulgated by the American National Standards Institute.

By filing a timely notice of contest with the Occupational Safety and Health Review Commission challenging the citation, Nelson Tree Services obtained a hearing before an administrative law judge. In an April 1, 1994, decision, the judge affirmed the citation and proposed penalty, concluding that the record established "that being struck by a prematurely felled tree is recognized as a hazard in the tree felling industries, and was specifically recognized by Nelson" and "that the cited hazard is likely to result in serious physical harm or death." Moreover, the judge determined that the proposed abatement measures—requiring workers not directly involved in the felling operation to stay out of the fall zone and limiting the size of the notch to roughly one-third of the tree's diameter—were feasible and would materially reduce the cited hazard. Finally, the judge held that $1,875.00 was an appropriate penalty.

Nelson Tree Services then petitioned the full Occupational Safety and Health Review Commission for discretionary review. Because the Commission declined to review the administrative law judge's decision, that decision became a final order of the Commission. This timely petition for review followed.

### III.

■ The Courts of Appeals have struggled throughout the years over how we review the decisions of agencies created by Congress. The foundation of this process began in 1951, with *Universal Camera v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Our review of the facts, as found by the agency or the official charged with agency operations, is whether or not there is substantial evidence in the record as a whole to support the facts as found. 29 U.S.C. § 660(a); *Carlisle Equip. Co. v. United States Secretary of Labor,* 24 F.3d 790, 792 (6th Cir.1994) (citing *Dunlop v. Rockwell Int'l,* 540 F.2d 1283, 1287 (6th Cir.1976)). Moreover, the Commission's conclusions of law are viewed favorably unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* (quoting *Empire–Detroit Steel Div. v. Occupational Safety and Health Review Comm'n,* 579 F.2d 378, 383 (6th Cir.1978)).

■ The Occupational Safety and Health Act is a comprehensive regulatory scheme broadly designed to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b); *Whirlpool Corp. v. Marshall,* 445 U.S. 1, 100 S.Ct. 883, 63 L.Ed.2d 154 (1980). Accordingly, the Act requires every employer to comply with occupational safety and health standards promulgated by the Secretary of Labor, 29 U.S.C. § 654(a)(2), and imposes a general duty upon an employer to furnish both "employment and a place of employment which are free from recognized hazards that are causing or likely to cause death or serious physical harm to his employees." 29 U.S.C. § 654(a)(1). This "general duty clause" is the cornerstone of the Act. In order to establish a violation of this provision, the Secretary of Labor must demonstrate that:

■ A condition or activity in the workplace presented a hazard to employees;

■ The cited employer or the employer's industry recognized the hazard;

■ The hazard was likely to cause death or serious physical harm; and

■ A feasible means existed to eliminate or materially reduce the hazard.

*E.g., Secretary of Labor v. Pelron Corp.,* 12 O.S.H. Cas. (BNA) 1833, 1835 (1986) (citing *Continental Oil Co. v. Occupational Safety and Health Review Commission,* 630 F.2d 446 (6th Cir.1980), *cert. denied,* 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 613 (1981)).

Nelson Tree Services argues that substantial evidence does not support the adminis-

trative law judge's finding that the danger of being struck by a prematurely felled tree is a recognized hazard in the utility line clearance industry. In support of its position, Nelson Tree Services first contends that the administrative law judge defined the hazard too broadly: "the hazard to employees of being struck by, or caught beneath an inadvertently, or prematurely, felled tree." It claims that the judge's definition of the hazard encompasses the mere "possibility" that employees will be struck by such a tree, and therefore constitutes a "potential hazard" rather than a "recognized hazard." *Pelron Corp.*, 12 O.S.H. Cas. at 1836.

■ We believe that the administrative law judge's definition of the relevant hazard was not fatally broad. As the Secretary pointed out, the concerns identified in *Pelron* are simply not present in this case, because the defined hazard is capable of being completely abated here. In this case, the administrative law judge defined the hazard in a way that gives Nelson Tree Services a broad view of its obligations and identifies practices over which it can reasonably be expected to exercise control. Moreover, given that "the Act is concerned with preventability and therefore with possible hazards and potential danger," *Illinois Power Co. v. Occupational Safety and Health Review Comm'n*, 632 F.2d 25, 28 (7th Cir.1980), the defined hazard— "the hazard to employees of being struck by, or caught beneath an inadvertently, or prematurely, felled tree"—appears to be precisely the type that the statute was designed to address.

■ Nelson Tree Services also asserts that the Secretary presented no evidence establishing that the *utility line clearance* industry recognized the cited hazard, challenging the administrative law judge's ruling that "falling a tree is falling a tree, whether it is the logging industry or power line clearance." Thus, it contends that the utility line clearance industry is distinct from the lumbering or logging industry, emphasizing that fellers typically "top" a tree prior to felling it in the utility line clearance industry thereby decreasing the importance of the wind's direction and speed.

■ However, we find that although felling preparations may differ according to the reason for felling, the danger posed by a falling tree remains the same; a falling tree creates the same hazard, regardless of why that tree is being felled. Simply put, it is dangerous for persons to walk in front of a notched tree, whether that tree is being felled for the utility line clearance industry or any other industry. Moreover, substantial evidence supports the administrative law judge's finding that Nelson Tree Services recognized the hazard of walking in front of a notched tree. The testimony by various Nelson employees indicating their awareness of the dangers posed by the tree-felling process supports this conclusion. In addition, American National Standards Institute standard Z133.1, which instructs that "[a]ll workers not directly involved in an operation shall be kept clear of the work area," specifically addressed the hazard of being struck by a prematurely felled tree. Nelson Tree Services incorporated this ANSI requirement into its own safety manual. As the Secretary pointed out, Nelson Tree Services' actual knowledge of the hazard is sufficient to establish that the hazard is "recognized." *Continental Oil Co.*, 630 F.2d at 448.

■ In essence, the hazard identified by the administrative law judge was comprised of two components: [1] walking in front of a notched tree; and [2] cutting a notch greater than one-third of the tree's diameter. Nelson Tree Services also asserts that none of the evidence that the Secretary presented established a uniformly-accepted tree notch depth. It emphasizes that although ANSI Z133.1 recommends a notch of "about one-third the diameter of the tree," other documents referenced recommend different depths. We agree with Nelson Tree Services that the Secretary failed to establish that a notch greater than one-third of a tree's diameter is a hazard in the utility line clearance industry. Nevertheless, this finding does not impact our ultimate conclusion as to the presence of a "recognized hazard," because we have also determined that Nelson Tree Services recognized the hazard of walking in front of a notched tree. However, because we disagree with the administrative

law judge's conclusion concerning the appropriate notch size, we find that Nelson Tree Services abatement obligations are modified accordingly.

Nelson Tree Services also claims that substantial evidence does not support the administrative law judge's finding that the suggested feasible means of abatement—preventing employees not directly involved in the felling operation from walking in front of a notched tree and limiting the notch size to "about one-third" of the tree's diameter—would materially reduce the cited hazard. Nelson Tree Services contends that the Secretary did not establish that restricting the access of persons not directly involved in felling the tree would materially reduce the hazard. Furthermore, it again stresses that while the ANSI standard proposes a notch size of "about one-third" of the tree's diameter, other sources and witnesses showed that no precise rule exists.

■ We find that substantial evidence supports the administrative law judge's finding that there existed feasible means, which Nelson Tree Services could and should have taken, to eliminate or substantially reduce the hazard of being struck by a prematurely felled tree. *Continental Oil Co.*, 630 F.2d at 448–49. Nelson Tree Services could and should have restricted the access of persons not directly involved in the felling process. As the Secretary stressed, the fact that Nelson Tree Services incorporated the relevant ANSI standard into its own safety manual does not satisfy its obligation; that standard must be followed and enforced.

To summarize, we believe that there is substantial evidence in the record as a whole to support the Secretary's finding that Nelson Tree Services violated the Occupational Health and Safety Act's "general duty clause," 29 U.S.C. § 654(a)(1), in light of the recognized hazard posed by walking in front of a notched tree and the feasible means of abating that hazard. Therefore, we affirm Nelson Tree Services' abatement obligation that relates to restricting the access of employees not directly involved in the felling process once a tree has been notched for felling. At the same time, we do not believe that there is sufficient evidence in the record

as a whole to establish that the Secretary has proven that a notch greater than one-third of a tree's diameter is a recognized hazard in the utility line clearance industry. Thus, Nelson Tree Services abatement obligations with regard to notch-sizing are limited accordingly.