82 F.3d 418
 17 O.S.H. Cas. (BNA) 1569, 1996 O.S.H.D. (CCH)
P 31,043
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NORTHWOOD STONE & ASPHALT, INC., Petitioner,
v.
The OCCUPATIONAL SAFETY & HEALTH REVIEW COMMISSION; Robert
B. Reich, United States Secretary of Labor, Respondents.
 No. 94-4327.
 United States Court of Appeals, Sixth Circuit.
 April 4, 1996.
 
 Before: MARTIN and BATCHELDER, Circuit Judges; and OLIVER,[1] District Judge.
 PER CURIAM.
 
 
 1
 This case arises out of a construction site accident resulting in severe injury to an employee of Northwood Stone & Asphalt, Inc. On October 1, 1991, Northwood, an asphalt road paving contractor, was resurfacing roads in Logan County, Ohio. On that date Robert E. Watt, Northwood's job superintendent and designated safety official on the site, came into contact with a live overhead power line and received an electric shock when he attempted to use an aluminum rake to disentangle the power line from the bed of a dump truck. When Watt was told that an overhead wire was tangled in the bed of the truck, he asked another employee, Charles Searles, to hand him the aluminum rake. Searles warned Watt that "electric and metal don't mix" but gave the rake to Watt anyway, reasoning "he's the boss." When Watt contacted the energized wire with the aluminum rake, he was thrown from the bed of the truck, falling fifteen feet and landing on his head on the side of the road. Watt survived but suffered severe injuries, including a blood clot in his brain, a broken vertebra, several fractured ribs, and third degree burns on his hands. Two wooden rakes were available at the job site at the time of the accident.
 
 
 2
 The Occupational Safety & Health Administration investigated the October 16, 1991, accident and issued two citations charging violations of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-78. The first citation listed four items, the second only one item. The Occupational Safety & Health Administration charged Northwood in Item One of the first citation with violating 29 C.F.R. § 1926.20(b)(1), which provides:
 
 
 3
 (b) Accident prevention responsibilities. (1) It shall be the responsibility of the employer to initiate and maintain such programs as may be necessary to comply with this part [Part 1926 of 29 C.F.R.].
 
 
 4
 The Administration believed Northwood's safety program violated Section 1926.20(b)(1) because Northwood "did not provide specific information concerning the necessary precautions and actions required when [employees are] working in areas of potential exposure to electrical power lines thereby exposing employees to a shock hazard." Citation, J.A. at 9.
 
 
 5
 The Administration also charged Northwood with violating 29 C.F.R. § 1926.416(a)(1) in Item Three of the first citation. Section 1926.416(a)(1) states:
 
 
 6
 No employer shall permit an employee to work in such proximity to any part of an electric power circuit in the course of work, unless the employee is protected against electric shock by deenergizing the circuit and grounding it or by guarding it effectively by insulation or other means.
 
 
 7
 The Administration believed Northwood violated Section 1926.416(a)(1) because admittedly Watt was working in proximity to an uninsulated and energized wire.
 
 
 8
 Northwood contested both citations. Pertinent to this appeal, Northwood stated in its answer to the Secretary's complaint that it has a specific safety program in place; that it designated each job superintendent as safety officer; that the safety officer conducted "tool box" meetings on a regular basis with employees; that it provided specific information concerning safety precautions for employees working in areas of potential exposure to power lines; that it maintained written hazard communications program; and, that employees received safety booklets and instructions. Furthermore, Northwood contended that it did not allow employees to work in proximity to electric "circuits" and that employees were directed to observe overhead power lines and stay clear of them. Northwood did not raise the affirmative defense of unpreventable employee misconduct in its answer in a separately numbered paragraph, as required by the Commission's procedural rules. J.A. at 25 (Secretary notified Northwood in writing to plead affirmative defenses according to Rule 34(b) of the Commission's procedural rules).
 
 
 9
 An administrative hearing was held on April 16, 1992. On March 15, 1993, the administrative law judge issued its order affirming the citations and decided that three of the items listed in citation one were serious violations. The administrative law judge only penalized Northwood on the serious violations: $4,250.00 for the Item One; $1,275 for the Item Two; and $4,250.00 for the Item Three. J.A. at 46.
 
 
 10
 Northwood petitioned for review by the Occupational Safety & Health Review Commission. The Commission limited its review to Items One (violation of Section 1926.20(b)(1)) and Three (violation of Section 1926.416(a)(1)) of the first citation. On November 1, 1994, the Commission issued an order affirming the administrative law judge's decision. Northwood now appeals the decision as to Items One and Three.
 
 
 11
 Pursuant to 29 U.S.C. § 660(a), our review of the findings of the Occupational Safety & Health Review Commission is limited. "The findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." Id.; Nelson Tree Servs. v. Occupational Safety & Health Review Comm'n, 60 F.3d 1207, 1209 (6th Cir.1995). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion....' The evidence 'must be enough to warrant a denial of a motion for a directed verdict in a civil case to a jury.' " Martin Painting & Coating Co. v. Marshall, 629 F.2d 437, 438 (6th Cir.1980) (citations omitted). As to the Commission's conclusions of law, we will view these favorably unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); Nelson Tree Servs., 60 F.3d at 1209 (citation omitted).
 
 
 12
 Northwood raises two challenges on appeal. First, Northwood challenges the Commission's finding that its safety training program did not comply with Section 1926.20(b)(1). Specifically, Northwood contends that the oral component of its safety program brought the entire program into compliance. The administrative law judge found "the employees had no training in how to handle a situation where the truck bed actually became entangled in an overhead line. Northwood's crew knew to avoid the line, but they were unaware of what actions to take if these precautions failed them." Decision, J.A. at 40.
 
 
 13
 While not explicitly adopting the administrative law judge's findings, the Commission reviewed the administrative law judge's findings and concluded that the administrative law judge did not err in finding that Northwood violated Section 1926.20(b)(1). The Commission was aware of Northwood's assertion that its safety program included both the written materials and the oral training, but found that the "testimony and exhibits show that Northwood's safety program [falls] short of [the goals of 29 C.F.R. § 1926.20(b)(1) ]." J.A. at 51. The Commission specifically found that Northwood's safety manual distributed to employees contained no instructions to persons working in the vicinity of overhead lines, did not even mention electric power lines, and contained no instructions for extricating a truck from overhead lines, including power lines. The Commission then held that Northwood's failure to include a written description of the hazard of overhead wires and a written procedure for disentangling a dump truck from such wires fell short of the standard of training a reasonably prudent employer would provide in the face of the known hazard of overhead wire. Commission's Order, J.A. at 51 (citing J.A. Jones Constr. Co., 15 BNA OSHC 2201, 2206, 1991-93 CCH OSHD p 29,964, p. 41,025 (No. 87-2059, 1993) (holding that an employer may reasonably be expected to conform its safety program to known duties and that a safety program must include those measures for detecting and correcting hazards which a reasonably prudent employer similarly situated would adopt).
 
 
 14
 Because the Commission found that Northwood violated Section 1926.20(b)(1) by failing to include in the written materials it provided to employees a discussion of the hazard of power lines and procedures for disentanglement, Northwood now argues that its safety policy does not have to be written. Northwood also argues that its oral policy was effective because "during the many years that [the four employees on the paving crew on October 16, 1991] have been engaged in the paving business they were unaware of one other incident of electrocution at Northwood or in the paving industry." The Secretary argues that Northwood's assertion that it need not have a written policy "misses the point." Northwood presented evidence through the testimony of its chief safety officer, Byron Fullerton, that its written safety program and the written record of the training provided at the tool box meetings provided a complete record of instruction provided to its employees. The Secretary insists that none of the tool box meetings covered safe practices for working near electrical power lines and did not indicate that any of the employees[2] on the October 1, 1991, paving crew had been so trained.
 
 
 15
 We agree with the Secretary. The Commission's decision that Northwood's safety program was inadequate did not rest solely on a finding that Northwood had no written policy regarding power lines or disentanglement. The Commission affirmed the findings of the administrative law judge regarding the inadequacy of Northwood's oral training for employees as part of its safety program and noted in its order that Northwood claimed that its oral training met the standard of Section 1926.20(b)(1). Contrary to Northwood's assertions, there is substantial evidence in the record to support the administrative law judge's and the Commission's findings that Northwood did not provide oral or written training regarding electric power lines, other than to instruct employees to stay away from overhead wires. Northwood knew of the hazard of overhead wires and entanglement. Watt testified that in his ten year career he had disentangled wires from trucks approximately 100 times. Northwood, though, was unable to produce a record of a tool box meeting that specifically addressed the topic of the dangers of power lines, the danger of contacting power lines with conductive equipment (including trucks) or how an employee should handle a situation where power lines become entangled on the bed of a dump truck. We do not believe that the Commission's interpretation of Section 1926.20(b)(1) as requiring a reasonably prudent employer to train employees about the hazard of electrical lines and entanglement is arbitrary, capricious or otherwise contrary to law. The Commission's findings that Northwood's safety program violated this standard is based on substantial evidence.
 
 
 16
 Northwood's challenge to its citation for violating Section 1926.416(a)(1) has three parts. 29 C.F.R. § 1926.416(a)(1) requires the employer to protect employees from electric shock "by deenergizing the circuit and grounding it or by guarding it effectively by insulation or other means." Northwood argues first that it did not violate Section 1926.416(a)(1) because, although it did not take steps to deenergize or insulate the live power line, it protected Watt by "other means" by providing Watt with a wooden handle rake to use to contact overhead wires. Northwood argues that had Watt used one of the wooden handle rakes instead of the aluminum rake, he would have been "completely safe" just as much as "a person who touches an insulated electric wire."
 
 
 17
 The Secretary counters that Northwood did not present this "other means" argument to the administrative law judge or to the Commission and therefore we may not entertain this argument on appeal. See 29 U.S.C. § 660(a) (stating that "[n]o objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances"). We agree with the Secretary that our review of Northwood's "other means" argument is foreclosed. In light of appellate case law holding that it is the Secretary's burden to prove violations of the workplace safety and health standards,[3] however, we must consider whether the Secretary had the burden to prove that Northwood did not protect Watt by "other means" in order to issue the citation in the first place. For the reasons that follow, we believe that the Secretary has the burden to prove that an employer's use of some other means to protect employees is not adequate or feasible, but that this burden arises only after the employer has identified the "other means" it used to comply with Section 1926.415(a)(1). Where the "other means" an employer claims to have used is not obvious, it is the employer who is in the best position to know what "other means" it has chosen to comply with OSHA standards. The employer must make the Secretary aware of the "other means" in order to trigger the Secretary's burden of proving a violation of Section 1926.20(b)(1).
 
 
 18
 In Ray Evers Welding, Co. v. Occupational Safety and Health Review Comm'n, 625 F.2d 726 (6th Cir.1980), we held that where a regulation does not specify a means of compliance, the burden of showing feasibility of compliance rests with the Secretary. Id. at 733 (citations omitted). In Ray Evers Welding, the Secretary cited the employer for neglecting to require its employees to use safety belts and lanyards when working at a height of approximately twenty feet above the ground. The regulation there, 29 C.F.R. § 1926.28(a), required the wearing of "appropriate personal protection equipment" but did not specify what type of equipment. In the instant case, Section 1926.416(a)(1) sets forth specific means by which an employer can comply with the regulation--by deenergizing or insulating an electric line--and also states that an employer may use any other, unspecified means to guard employees from this hazard. Thus, Northwood could have shifted the burden to the Secretary to show that the wooden handle rakes were not a feasible method of complying with Section 1926.4169(a)(1), but Northwood did not argue at the hearing level that the wooden handle rakes were the method it chose to protect employees from the hazard of electric power lines.[4] The Secretary has carried his burden to show that Northwood did not protect employees from the electric power line by the specific methods indicated in the regulation and the burden did not shift to the Secretary to show that Northwood's provision of wooden handle rakes was not a feasible method of complying with Section 1926.416(a)(1).
 
 
 19
 In the alternative, Northwood argues that even if it violated Section 1926.416(a)(1), the Commission erred in not addressing the "unpreventable employee misconduct" defense it claims to have raised through its evidence at the administrative hearing. We will not review Northwood's "unpreventable employee misconduct" defense because Northwood also raises it for the first time on appeal. On appeal, Northwood is claiming that it was Searles who committed the unpredictable conduct by handing the aluminum rake to Watt. Throughout the administrative proceedings Northwood argued that Watt's actions were the "unpredictable employee misconduct." Northwood cannot now raise this new argument. 29 U.S.C. § 660(a).
 
 
 20
 Finally, Northwood argues that its "unpredictable employee misconduct" defense regarding Watt's actions is reviewable on appeal because, although it had not affirmatively presented the defense in its answer, it claims to have presented evidence on the issue and relies on the administrative law judge's remark regarding the defense in its holding. Northwood asserts that the administrative law judge "amended the pleadings sua sponte " by commenting on the defense in its order: "Northwood did not assert the unpreventable employee misconduct defense, nor would such a defense prevail in this case." Administrative Law Judge's Order p. 8. The Commission refused to address this defense because Northwood had not affirmatively pled the defense and had at no time made a motion to amend its answer either before the administrative law judge or on review.
 
 
 21
 Whatever the administrative law judge's comment means, it does not indicate that the judge was "amending" Northwood's answer sua sponte pursuant to Federal Rule of Civil Procedure 15(b) as Northwood argues. Civil Rule 15(b) permits a court to amend the pleadings upon motion by a party. We have found no case permitting a court to amend the pleadings sua sponte. Furthermore, Civil Rule 15(b), upon which Northwood relies, is not applicable in this proceeding because it has no "gap-filling" role to serve in light of the Commission's procedural rules.
 
 
 22
 Section 2200 of Part 29 of the Code of Federal Regulations sets forth the procedural rules for proceedings before the Commission. One section, 29 C.F.R. § 2200.2(b), provides that "[i]n the absence of a specific provision, procedure shall be in accordance with the Federal Rules of Civil Procedure." Section 2200.34(b)(3) requires that "[t]he [employer's] answer shall include all affirmative defenses being asserted ... [including] 'unpreventable employee misconduct.' " Furthermore, Section 2200.34(b)(4) states that "[t]he failure to raise an affirmative defense in an answer may result in the party being prohibited from raising the defense at a later stage in the proceeding, unless the Judge finds that the party has asserted the defense as soon as practicable." Because this defense is being raised "at a later time" the question becomes whether the administrative law judge found that the defense was asserted as soon as practicable.
 
 
 23
 Whatever the phrase "as soon as practicable" means in Section 2200.34(b)(4), it certainly requires the party asserting an affirmative defense to raise it during the administrative hearing so that the judge may make the requisite finding as to whether the defense was raised "as soon as practicable." Here, Northwood did not assert its unpreventable employee misconduct defense until its petition for review by the Commission. Section 2200.34(b)(4) is a specific and mandatory rule and there appears to be no "gap" for the Federal Rules of Civil Procedure to fill. Therefore, pursuant to the procedural rules of the Commission, Northwood did not assert the affirmative defense in timely manner in accordance with the Commission's procedural rules. A/C Elec. Co. v. Occupational Safety and Health Review Comm'n, 956 F.2d 530, 534 (6th Cir.1991) (employer waived affirmative defense of impossibility by failing to plead it according to the applicable procedural rule).
 
 
 24
 Based on the foregoing, we AFFIRM the decision of the Occupational Safety & Health Review Commission.
 
 
 
 [1]
 The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [2]
 Watt may have received some training with regard to power lines at Northwood's annual superintendent's training. However, the citation was for maintaining an inadequate safety program as to all employees
 
 
 [3]
 See, e.g., National Engineering & Contracting Co. v. Occupational Safety and Health Review Comm'n, 45 F.3d 476, 479 n. 7 (D.C.Cir.1995) (stating that "the Secretary bears the burden of establishing the alleged violation"); Century Steel Erectors, Inc. v. Dole, 888 F.2d 1399, 1402 (D.C.Cir.1989) (stating that in establishing prima facie case of employer's failure to ensure use of safety belts by welders, Secretary had to show that use of the safety belts was not impractical); B & B Insulation, Inc. v. Occupational Safety and Health Review Comm'n, 583 F.2d 1364 (5th Cir.1978) (Secretary has burden of proving all elements of a violation)
 
 
 [4]
 Since this accident, OSHA has promulgated 29 C.F.R. § 1926.416(g)(2) (Eff. June 30, 1993), which prohibits employees from contacting overhead lines with conductive materials, tools or equipment