**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 08a0444n.06**
**Filed: July 29, 2008**

**No. 07-4118**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| VALLEY INTERIOR SYSTEMS, INC., | ) | |
| | ) | |
| Petitioner-Appellant, | ) | ON PETITION FOR REVIEW OF |
| | ) | A FINAL ORDER OF THE |
| v. | ) | OCCUPATIONAL SAFETY AND |
| | ) | H E A L T H   R E V I E W |
| OCCUPATIONAL SAFETY AND HEALTH | ) | COMMISSION. |
| REVIEW COMMISSION | ) | |
| | | |
| Respondent-Appellee. | | |

Before:  BOGGS, Chief Judge; and RYAN and COLE, Circuit Judges.

BOGGS, Chief Judge.  Valley Interior Systems, Inc. ("Valley") petitions this court for review of an order of the Occupational Safety & Health Review Commission ("Commission") fining it for violating the General Duty clause, § 5(a)(1), of the Occupational Safety and Health Act ("Act"), 29 U.S.C. § 654(a)(1).  Because there is substantial evidence to support the conclusion of the Administrative Law Judge that the company violated the Act and was not entitled to the affirmative defense of unpreventable employee misconduct, we deny the petition for review.

Valley Interior Systems, Inc. ("Valley"), a commercial construction contracting company, was hired to hang exterior framing for a new building at Central State College in Wilberforce, Ohio. On February 28, 2006, Valley rented an eighty-foot articulating lift from United Rentals, Inc. ("United").  Upon delivery, Anthony Michael, Valley's field foreman for the project, inspected the

lift and assigned a Valley employee, Jim Hill, to operate it.  A short time later, a second Valley employee called Michael to let him know that the lift was not working properly.  Specifically, the extendable lower portion of the lift would not retract and one of the mechanical hinges was stuck.  Despite these malfunctions, Hill eventually was able to manipulate the basket to the ground.  Michael tested the lift by operating it from the ground controls.  He also got into the basket and raised it to a height of approximately 25 feet.  Michael could not, however, get the stuck parts of the lift to retract or bend.  Michael believed that the hydraulics had not properly warmed up, but he called a representative from United to discuss the situation.  United told Michael that it could not do anything that day, but it could either send a representative or switch out the equipment the next day.  Michael responded that he did not think the machine needed to be "switched out" because the lift was functioning enough to reach the areas on which they were working.  Hill, who had overheard the conversation, told Michael that he wanted to get back to work; Michael allowed this.  A short time later, the lift flipped over, killing Hill.

The Commission investigated the accident and issued Valley a serious citation for failing to remove the lift in violation of the General Duty clause, § 5(a)(1), of the Act.  Valley objected, and a hearing was held before an ALJ, who ultimately affirmed the citation. Valley's petition to the Commission for discretionary review was denied, making the ALJ's decision the final order of the Commission. 29 U.S.C. § 661(j).  Valley now petitions this court to review the ALJ's affirmance of the citation and denial of its affirmative defense of unpreventable employee misconduct.

**II**

We review the factual findings of the Commission under the deferential substantial evidence standard. 29 U.S.C. § 660(a). We review the Commission's conclusions of law favorably unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Danis-Shook Joint Venture XXV v. Sec'y of Labor*, 319 F.3d 805, 809 (6th Cir. 2003) (internal citations omitted).

Section 5(a)(1) of the Act provides that each employer "shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." 29 U.S.C. § 654(a)(1). Known as the General Duty clause, this "is the cornerstone of the Act." *Nelson Tree Servs. v. OSHRC*, 60 F.3d 1207, 1209 (6th Cir. 1995). In order to establish a violation of this provision, the Secretary of Labor must demonstrate that: (1) a condition or activity in the employer's work place presented a hazard; (2) the cited employer or its industry recognized the hazard; (3) the hazard was causing or likely to cause death or serious physical harm; and (4) feasible means existed to eliminate or materially reduce the hazard. *Ibid.*

If a violation is established, an employer may still assert the affirmative defense of unpreventable employee or supervisor misconduct. To avail itself of this defense, an employer must demonstrate that: (1) it had a thorough safety program designed such that, if followed, it would prevent the violations at issue; (2) it communicated the program and fully enforced the program; (3)

the conduct of the employee or supervisor was unforeseeable; and (4) the safety program was effective in theory and practice. *Danis-Shook Joint Venture XXV*, 319 F.3d at 812.

On appeal, Valley argues that the hazard was not recognized, and therefore that it did not violate the Act. Alternatively, it argues that it established the affirmative defense of employee or supervisor misconduct. A hazard is deemed "recognized" when the potential danger of the condition or practice is either actually known to the particular employer or generally known in the industry. *Continental Oil Co. v. OSHRC*, 630 F.2d 446, 448 (6th Cir. 1980). The ALJ defined the hazard as "the continued operation of an aerial lift which had malfunctioned," *Valley Interior Systems, Inc. v. OSHRC*, No. 06-1395, slip op. at 8 (June 11, 2007), and held that the hazard was recognized by both the industry and by Valley. The ALJ relied on two sets of facts in making that conclusion. First, the lift's operating manual, the warning decals located on the lift itself, and standards referred to in the operating manual all stated that a malfunctioning lift should be removed from service. Second, Valley's written safety policy stated that malfunctioning lifts should be removed from service.

Valley's only evidence that the hazard was not recognized was testimony from Michael and Scott Mallin, another employee present at the work site, in which they stated that did not see any danger in continuing to operate the lift. Not only were Michael's and Mallin's beliefs contrary to Valley's own written safety policy, their testimony does nothing to rebut the evidence that the industry recognized the hazard. If anything, the testimony is relevant only to whether Valley effectively communicated its safety policy to its employees. Accordingly, the ALJ's conclusion that

Valley violated the General Duty clause is supported by substantial evidence. The only remaining question is whether the ALJ erred in holding that Valley had not established the affirmative defense of employee misconduct.

The ALJ found that Valley had established adequate work rules that, if followed, would have prevented the violation in question. The ALJ also found that Valley had not effectively communicated these rules to its employees or adequately enforced them. On appeal, Valley argues that it introduced ample evidence that it communicated its safety policies, including evidence that Michael led an accident prevention meeting at the work site on December 16, 2005, approximately two and a half months before the accident. At that meeting Michael allegedly reviewed with his workers what to do if a piece of equipment is faulty. Valley also introduced evidence that both Michael and Hill had worked with aerial lifts for numerous years and that they had received classes and training in the operation of aerial lifts.

Valley argues, contrary to the ALJ's finding, that it did adequately enforce its rules. During the hearing, Valley introduced a documented list of fourteen disciplinary actions taken by Valley against Valley employees for violating various safety rules. This list included disciplinary actions for not wearing safety glasses, not wearing a hard hat, not using fall protection such as a safety belt or harness, and using unauthorized equipment as a stepping stool. None of the violations, however, involved using malfunctioning equipment.

Though Valley did introduce some evidence that Michael and Hill received instruction on removing malfunctioning equipment, there was substantial evidence to support the ALJ's conclusion

that Valley had not met its burden of proof in establishing that it *effectively communicated* this rule. Indeed, Valley's own attorney conceded during oral argument that Michael and Hill did not see a safety violation and "thought it [the malfunction] was a minor inconvenience." *Valley Interior Systems, Inc. v. OSHRC*, No. 07-4118 (Transcript of Oral Argument, June 9, 2008). Furthermore, Valley's CEO did not think that Michael had "done anything wrong." Though not tantamount to a concession, these statements are strong evidence that Valley failed to communicate effectively the safety rule mandating removal of malfunctioning equipment. As the ALJ explained, "not disciplining Michael because he did not knowingly violate the rule implies Valley understood it had not adequately communicated the work rule." *Valley*, No. 06-1395, slip op. at 13. Also troubling was Michael's testimony that he did not see any danger in continuing to operate the lift after discovering the initial malfunction; that he did not know whether he would have stopped using the lift if he had read the portion of the operator's manual directing him not to use a malfunctioning lift; and that he did not know if reading that warning would have given him any cause for concern. On this evidence, the ALJ could reasonably conclude that either the rule was not clear or that it was not clearly communicated.

As for Valley's enforcement of the rules, as the ALJ noted, Valley did not introduce any evidence that it enforced the particular rule about removing malfunctioning equipment. Of course, producing such evidence would be impossible if there were no prior violations of that rule, nevertheless, the burden remained on Valley. In addition to the lack of evidence regarding past discipline, the ALJ also relied on the fact that neither Michael nor Hill was disciplined following

the accident.  In its brief to the ALJ, Valley's characterized its safety rules as being an "absolute prohibition or zero tolerance policy against the use of malfunctioning equipment regardless of whether the malfunction presents any hazard." *Valley*, No. 06-1395, slip op. at 13-14.  The ALJ noted that if this characterization were correct, then Michael should have "received some discipline." *Ibid.*  The ALJ also relied on the fact that neither Michael nor Hill were concerned about being disciplined when they continued to operate the lift.  Though this evidence supports the finding that Valley failed to communicate the workplace rule, it also reflects on Valley's failure to enforce the rule. *See, e.g.*, *West Star Energy v. OSHC*,  20 OSHC (BNA) 17362 (OSHC Jan. 6, 2004) ("Also, factors such as the employees' repeated noncompliance with work rules or misconduct involving a number of employees may be indications of ineffective enforcement.").

Ultimately, the ALJ's conclusions that: (1) Valley violated the General Duty clause; and (2) the affirmative defense of employee misconduct was unavailable because Valley failed to demonstrate that it effectively communicated or adequately enforced its rules are supported by substantial evidence.  We accordingly affirm the Commissioner's order and deny Valley's petition for review.