SECRETARY OF LABOR, COMMONWEALTH of Kentucky, Appellant

v.

UNITED PARCEL SERVICE, INC.; Kentucky Occupational Safety and Health Review Commission; and General Drivers, Warehousemen & Helpers, Local Union No. 89, Appellees

NO. 2015–CA–001376–MR

Court of Appeals of Kentucky.

FEBRUARY 24, 2017

BRIEFS FOR APPELLANT: Susan L. Draper, Kentucky Labor Cabinet, Frankfort, Kentucky

BRIEF FOR APPELLEE, UNITED PARCEL SERVICE, INC.: Carla J. Gunnin, Atlanta, Georgia, Tony C. Coleman, Griffin Terry Sumner, Louisville, Kentucky

BRIEF FOR APPELLEE, KENTUCKY OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION: Frederick G. Huggins, Frankfort, Kentucky

BRIEF FOR APPELLEE, GENERAL DRIVERS, WAREHOUSEMEN & HELPERS, LOCAL UNION NO. 89: Devon N. R. Oser, Louisville, Kentucky

BEFORE: COMBS, J. LAMBERT, AND STUMBO, JUDGES.

OPINION

LAMBERT, J., JUDGE:

The Secretary of Labor, Commonwealth of Kentucky (the Secretary or the Labor Cabinet) has appealed from the opinion and order of the Franklin Circuit Court affirming the Kentucky Occupational Safety and Health Review Commission's (Review Commission) Decision and Order dismissing a citation against United Parcel Service, Inc. (UPS), imposed under the Kentucky Occupational Safety and Health Act (KOSHA), Kentucky Revised Statutes (KRS) 338.011 through 338.991, and holding that the Secretary failed to meet his burden of proof under KRS 338.031(1), the General Duty Clause. Finding no error, we affirm.

This action began with the filing of a citation and notification of penalty on December 2, 2011. As a result of an inspection of UPS at the airport hub on Grade Lane in Louisville from September 28 through October 31, 2011, the Labor Cabinet cited UPS for a serious violation of KRS 338.031(1)(a), the General Duty Clause, which requires an employer to "furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." The language of the citation is as follows:

a. On or before 09/28/2011, approximately 800 employees were exposed to the hazard of being struck by runaway dollies while the employees were working on the ramp, in that the E-hitches periodically malfunctioned allowing the dollies to become unattached from the ramp tractor. One feasible and acceptable abatement method, among others, to correct this hazard, is to install a hitch capable of being locked/latched in the closed position on the ramp tractors.

b. On or before 9/28/2011, approximately 800 employees were exposed to the hazard of being struck by runaway dollies while the employees were working on the ramp, in that the dolly hitches periodically malfunctioned allowing the dollies to become unattached from the dolly train. One feasible and acceptable abatement, among others, to correct this hazard, is to install a hitch capable of being locked/latched in the closed position on the dollies.

A proposed penalty of $7,000.00 was set, and UPS was given until January 4, 2012, to abate the violation. UPS, through Health & Safety Manager Mike Werner, contested the citation by letter to the Labor Cabinet dated December 15, 2011.

On December 27, 2011, the Secretary filed a complaint with the Review Commission seeking a hearing and affirmation of the citation, penalty, and period of abatement. General Drivers, Warehousemen and Helpers Local Union 89 (Teamsters Local 89) requested party status and was subsequently designated as the authorized employee representative. Teamsters Local 89 later moved to intervene because the dispute addressed the safety of the E-hitches and dolly hitches. UPS filed an answer denying the allegations in the complaint. The matter was assigned to a hearing officer, and a hearing was scheduled. In its pre-hearing memorandum, UPS stated its position as being that the Secretary could not establish a *prima facie* violation of the General Duty Clause because there was no recognized hazard in using the hitches noted in the citation.

Following the hearing, the parties filed briefs detailing their respective positions. The Secretary argued that UPS failed to keep its workplace free of the hazard of

the dollies breaking free, that UPS recognized this hazard because it maintained a database of runaway dollies, that the hazard was likely to cause death or serious physical harm, and that there were feasible means to reduce or eliminate the hazard, such as using locking hitches. UPS responded, first arguing that it was improperly cited under the General Duty Clause and should have been cited under the powered industrial truck (PIT) standard. UPS went on to argue that the Secretary failed to prove there was a hazard because no employee had ever been struck by a dolly and the chance of a runaway was very small, that UPS had actual knowledge of or the industry recognized a problem with malfunctioning hitches, and that a feasible abatement method existed. Teamsters Local 89 also filed a brief, disputing UPS's claim that it was subject to the PIT standard.

The Hearing Officer served her findings of fact, conclusions of law, and recommended order on March 29, 2013. Based upon the evidence and testimony presented, the Hearing Officer concluded that "E-hitch malfunctions do occur and that UPS has no reliable, consistent means of preventing them. Once a tongue has popped out of a hitch there is no good way of knowing whether the breakaway was caused by an [sic] hitch malfunction or by human error unless the latch is visibly impaired." Testimony also addressed abatement methods, including the use of lockable hitches, which UPS was in the process of testing. Rejecting UPS's argument that the PIT standard applied because that provision does not deal with hitches, the Hearing Officer went on to conclude that the Secretary had established a violation of the General Duty Clause based upon testimony "that the E-hitches malfunctioned periodically causing the dollies to become unhitched." However, she reduced the proposed penalty to

$4,250.00. The Hearing Officer recommended UPS abate the violation and pay the fine within thirty days from the entry of the final order.

UPS filed a petition with the Review Commission for discretionary review of the Hearing Officer's recommended order. UPS argued that the PIT standard applied to it rather than the General Duty Clause, that the Hearing Officer erred in finding that the E-hitches malfunctioned because there was no evidence to support this conclusion, and that the Hearing Officer failed to properly analyze whether there existed a hazard of malfunctioning hitches, whether this malfunction was a recognized hazard, and whether there was a feasible abatement method to address it. Over the Secretary's objection, the Review Commission accepted the case for discretionary review and ordered the parties to file briefs. TUG Technologies, the company that manufactured the E-hitches, moved to intervene in the action based on the allegation of a product defect that could impact its interests in future litigation. While the Review Commission did not permit TUG to intervene, it opted to treat its petition as an amicus brief. The Hearing Officer also directed the parties to file supplemental briefs related to the evidence to support or refute a finding that the E-hitch was defective. In his supplemental brief, the Secretary admitted that there was no direct evidence, but asserted that this may be inferred from the evidence. In contrast, UPS argued that there was no evidence to support a finding that the E-hitches were defective or malfunctioned and that the Secretary's choice of words in the citation meant that he had to prove that the breakaways occurred as a result of malfunctioning E-hitches.

The Review Commission entered its decision on April 7, 2014, rejecting the Hearing Officer's recommendation and holding

that the Secretary failed to meet his burden of proving a violation of the General Duty Clause. While it found that the Secretary had established employee exposure to the hazard of being struck by a runaway dolly, the Review Commission found there was no evidence that the E-hitches malfunctioned or that this hazard was recognized by UPS or by the industry. Therefore, the Review Commission reversed the Hearing Officer's findings of an E-hitch malfunction and that UPS or the industry had knowledge of such. It went on to observe:

> While we agree UPS has no reliable ability to prevent hitch separation, runaways, at its Louisville facility, that is not the issue in this case. Labor in its citation charged the company with permitting its employees to be exposed to the hazard of malfunctioning hitches. Labor, however, has failed to prove UPS's hitches malfunctioned. As the enforcer of the act, the Cabinet has the duty to write citations it is prepared to support.

The Review Commission determined that UPS's workplace was free from the hazard of employees being struck by a runaway dolly because of an E-hitch malfunction. Regarding the abatement, the Review Commission pointed to UPS's unrebutted proof that it was in the process of evaluating methods of abatement but had not found a workable one. Therefore, it concluded that the Secretary failed to prove a feasible method existed to abate the hazard. One commissioner dissented from the majority opinion.

The Secretary filed a petition for judicial appeal in Franklin Circuit Court pursuant to KRS 338.091, arguing that the Review Commission's final order was arbitrary and contrary to substantial evidence. It requested reinstatement of the Hearing Officer's recommended order and of the original $7,000.00 penalty. Following brief-ing by the parties, the circuit court entered an opinion and order on May 28, 2015, affirming the Review Commission's decision. The Secretary moved the court to reconsider its opinion, arguing that it had considered the appeal under the elements of a specific standard violation rather than under the General Duty Clause. In an opinion and order entered August 14, 2015, the circuit court granted the Secretary's motion and vacated its original decision. However, it again affirmed the Review Commission's decision under the correct standard, finding that it was based upon substantial evidence in the record and was therefore not arbitrary. This appeal now follows.

On appeal, the Secretary contends that the circuit court erred in affirming the Review Commission's dismissal of the citation based upon his failure to prove that the E-hitches malfunctioned, that the hazard was recognized, or that there was a feasible means of abatement. We disagree and therefore affirm the circuit court's opinion.

 Our standard of review in administrative appeals is well-settled in the Commonwealth:

> Judicial review of an administrative decision is concerned with whether the action of the agency was arbitrary. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964). Three grounds exist for finding that an agency's decision was arbitrary: (1) the agency acted in excess of its statutory powers, (2) the agency did not afford procedural due process, and (3) the agency's decision was not supported by substantial evidence. *Id.*

*Baesler v. Lexington–Fayette Urban Cnty. Gov't*, 237 S.W.3d 209, 212 (Ky. App. 2007). "If [a] decision is erroneous as a matter of law, it is inherently arbitrary." *Bd. of Ad-*

*justments, Bourbon Cnty. v. Brown*, 969 S.W.2d 214, 216 (Ky. App. 1998). "[T]his Court is authorized to review issues of law on a de novo basis." *All. for Kentucky's Future, Inc. v. Envtl. & Pub. Prot. Cabinet*, 310 S.W.3d 681, 686 (Ky. App. 2008), as modified (May 8, 2009), citing *Mill Street Church of Christ v. Hogan*, 785 S.W.2d 263, 266 (Ky. App. 1990). In *Kentucky Unemployment Ins. Com'n v. Cecil*, 381 S.W.3d 238, 245–46 (Ky. 2012), the Supreme Court went on to define substantial evidence:

> Substantial evidence has been defined as evidence which has sufficient probative value to induce conviction in the minds of reasonable people. *Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972). If there is substantial evidence in the record to support an agency's findings, the findings will be upheld, even though there may be conflicting evidence in the record. *Kentucky Comm'n on Human Rights v. Fraser*, 625 S.W.2d 852, 856 (Ky. 1981). An agency's findings are clearly erroneous if arbitrary or unsupported by substantial evidence in the record. *Id.* If the reviewing court concludes the rule of law was correctly applied to facts supported by substantial evidence, the final order of the agency must be affirmed. *Brown Hotel Co. [v. Edwards]*, 365 S.W.2d [299] at 302 [ (Ky. 1962) ].

■ "A court's function in administrative matters is one of review, not reinterpretation." *Thompson v. Kentucky Unemployment Ins. Com'n*, 85 S.W.3d 621, 624 (Ky. App. 2002) (footnote omitted).

In *Dep't of Labor v. Morel Const. Co.*, 359 S.W.3d 438, 442–43 (Ky. App. 2011), this Court specifically addressed KOSHA actions:

> KOSHA is patterned after its federal counterpart, the Federal Occupational Safety and Health Act of 1970 (OSHA),

29 U.S.C.A. §§ 651–678 (2001). By way of background,

> [t]he Occupational Safety and Health Act's stated purpose is to provide "so far as possible every working man and woman in the Nation safe and healthful working conditions...." *Whirlpool Corp. v. Marshall*, 445 U.S. 1, 12, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980). Its purpose is neither punitive nor compensatory, but rather forward-looking; i.e., to prevent the first accident. *Mineral Industries & Heavy Construction Group, v. OSHRC*, 639 F.2d 1289, 1294 (5th Cir. 1981). To implement the statutory purpose, Congress imposed dual obligations on employers to comply both with a "general duty clause" requiring that the employer free the workplace of all recognized hazards, 29 U.S.C. § 654(a)(1), and a "special duty clause" which requires compliance with mandatory occupational safety and health standards issued by the Secretary, 29 U.S.C. § 654(a)(2).

*Brock v. L.E. Myers Co., High Voltage Div.*, 818 F.2d 1270, 1275 (6th Cir. 1987).

KOSHA tracks the Federal Act in most respects and, pursuant to KRS 338.061(2), the Kentucky Occupational Safety and Health Standards Board is authorized to adopt federal standards for occupational safety and health as KOSHA standards. The Kentucky Supreme Court has interpreted the two Acts consistently, and we have often turned to Federal decisions for guidance in interpreting KOSHA. *See Ky. Labor Cabinet v. Graham*, 43 S.W.3d 247, 253 (Ky. 2001); *see also Lexington–Fayette Urban County Gov't v. Offutt*, 11 S.W.3d 598 (Ky. App. 2000) (finding federal law persuasive authority to determine whether there had been a violation of KRS 338.031).

■ For his first argument, the Secretary contends that the circuit court erroneously upheld the dismissal of the citation based on his failure to establish that the E-hitches malfunctioned, asserting that the applicable statute did not require him to establish the source of the hazard. UPS contends that, because the Secretary chose to word the recognized hazard as being caused by malfunctioning hitches, rather than simply runaway dollies, he must establish that fact. We agree with UPS.

Under KRS 338.031, every employer has the following general duty to his employees:

(1) Each employer:

(a) Shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;

(b) Shall comply with occupational safety and health standards promulgated under this chapter.

(2) Each employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this chapter which are applicable to his own actions and conduct.

In analyzing the federal counterpart of the General Duty Clause, the Sixth Circuit Court of Appeals set forth the elements necessary to establish a violation of that provision as follows:

[1] A condition or activity in the workplace presented a hazard to employees;

[2] The cited employer or the employer's industry recognized the hazard;

[3] The hazard was likely to cause death or serious physical harm; and

[4] A feasible means existed to eliminate or materially reduce the hazard.

*Nelson Tree Servs., Inc. v. Occupational Safety & Health Review Comm'n*, 60 F.3d 1207, 1209 (6th Cir. 1995). *See also Lexington–Fayette Urban Cnty. Gov't v. Offutt*, 11 S.W.3d 598, 600–01 (Ky. App. 2000).

■ Under the second prong of the *Nelson Tree* test, a recognized hazard must be defined "in a way that gives [the employer] a broad view of its obligations and identifies practices over which it can reasonably be expected to exercise control." *Nelson Tree*, 60 F.3d at 1210. Under this definition and the way the Secretary wrote the citation, UPS asserts that the recognized hazard at issue in this case was runaway dollies that were caused by malfunctioning hitches:

a. On or before 09/28/2011, approximately 800 employees were exposed to the hazard of being struck by runaway dollies while the employees were working on the ramp, *in that the E-hitches periodically malfunctioned* allowing the dollies to become unattached from the ramp tractor. One feasible and acceptable abatement method, among others, to correct this hazard, is to install a hitch capable of being locked/latched in the closed position on the ramp tractors.
b. On or before 9/28/2011, approximately 800 employees were exposed to the hazard of being struck by runaway dollies while the employees were working on the ramp, *in that the dolly hitches periodically malfunctioned* allowing the dollies to become unattached from the dolly train. One feasible and acceptable abatement, among others, to correct this hazard, is to install a hitch capable of being locked/latched in the closed position on the dollies.

(Emphasis added.) While the Secretary is correct that generally the identification of the source of the hazard is not an element of the General Duty Clause, in this case the way in which the hazard was identified

in the citation requires him to establish that the runaway dollies were caused by malfunctioning hitches. Had the Secretary not included malfunctioning hitches in the citation, but merely identified the hazard as runaway dollies, the outcome would be different.

Accordingly, we agree with UPS that in this case the Secretary was required to establish that the runaway dollies were caused by malfunctioning hitches in order to provide a violation of the General Duty Clause. In addition, we reject the Secretary's argument that the Review Commission applied an improper definition of "malfunction" and his alternative argument that he proved the hitches malfunctioned. There is not substantial evidence in the record to support this assertion.

■ For his next argument, the Secretary asserts that the citation was erroneously dismissed based upon his failure to prove the hazard was recognized and therefore the ruling must be revisited. Based upon our holding that the Secretary was required—and failed—to establish that the runaway dollies were caused by malfunctioning hitches, we find no merit in this argument. Rather, the testimony of record establishes that neither UPS nor the industry recognized that malfunctioning hitches were a hazard, as UPS argued in its brief.

For his final argument, the Secretary contends that the citation was erroneously dismissed based upon his failure to prove a feasible means of abatement under the fourth prong of the *Nelson Tree* test ("[a] feasible means existed to eliminate or materially reduce the hazard"). 60 F.3d at 1209. He states that the Review Commission incorrectly applied the law and placed a higher burden on him than required by the Act.

In the citation, the Labor Cabinet identified the method of feasible abatement as

the installation of "a hitch capable of being locked/latched in the closed position" on both the ramp tractors and the dollies. The Review Commission found that, based upon its interpretation of the applicable law, "the Labor Cabinet must at the trial prove an abatement method exists which is capable of being implemented and is not still being evaluated." The Review Commission determined that UPS was in the process of evaluating methods of abatement but had not found a workable one and, therefore, the Secretary failed to prove a feasible abatement method existed. *See Empire–Detroit Steel Div., Detroit Steel Corp. v. Occupational Safety & Health Review Comm'n*, 579 F.2d 378, 384 (6th Cir. 1978) ("The duty imposed by the general duty clause of the Act must also be capable of achievement."); *Nat'l Realty & Const. Co. v. Occupational Safety & Health Review Comm'n*, 489 F.2d 1257, 1268 (D.C. Cir. 1973) ("[T]the Secretary must be constrained to specify the particular steps a cited employer should have taken to avoid citation, and to demonstrate the feasibility and likely utility of those measures."); *Secretary of Labor v. Pepperidge Farm, Inc.*, 17 O.S.H. Cas. (BNA) 1993 (O.S.H.R.C. Apr. 26, 1997) (Affirming a dismissal based upon the judge's finding that "the means of abatement put forth by the Secretary were unproven and would have required trial and error to determine whether they would materially reduce the hazard and, if so, at what level.").

The Secretary cites to *Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 507, 101 S.Ct. 2478, 2489, 69 L.Ed.2d 185 (1981), for the United States Supreme Court's definition of "feasible" in a case in which the cotton industry challenged the validity of OSHA's cotton dust standard in terms of a cost/benefit analysis. The Supreme Court held that the Secretary of Labor's interpretation that "the Act re-

quires OSHA to promulgate standards that eliminate or reduce such risks 'to the extent such protection is technologically and economically feasible'" was the correct interpretation. In this case, because locking E-hitches exist and are available, the Secretary contends that he met his burden to establish that a feasible abatement method exists. On the other hand, UPS argues that there is no evidence establishing that any hitch could prevent or reduce human error in improperly latching the hitch.

While the Secretary's argument that "[a]n employer could relieve itself from obligation under the general duty standard by claiming it was still evaluating abatement methods and never have to correct a hazardous condition" has some merit in light of the fact that locking hitches exist, the fact still remains that the Secretary failed to establish the recognized hazard prong of the *Nelson Tree* test. Therefore, whether a feasible abatement was established is immaterial in our review.

For the foregoing reasons, the orders of the Franklin Circuit Court affirming the decision of the Review Commission are affirmed.

ALL CONCUR.